Rees
v.
Overbaugh.

---

## REES *against* OVERBAUGH.

Where the seals of an agreement were torn off by one with whom it had been left for safe keeping by both parties, *held*, that this did not destroy the deed; but an action of covenant would still lie upon it.

A stranger tearing off the seal will not vitiate a deed.

COVENANT, tried at the *Montgomery* circuit, *December*, 1824, before WALWORTH, C. Judge.

The action was for money claimed by the plaintiff, to be due from the defendant to him, on sealed articles of agreement, dated *February 8th*, 1808, executed by the parties, and left with one *Jackson*, for safe keeping. The plaintiff afterwards authorized *Jackson* to receive $2500 (the whole debt being $3000) of the money due on the agreement; and pass it to the plaintiff's credit on account. *Jackson* received money at different times; and on a cast, when the last payment was made to him, he thought the sum due on the agreement was fully paid; and, on that supposition, tore the seals off the agreement. These facts being proved at the trial,

Various evidence was given upon the question, whether the whole was in fact paid, as supposed by *Jackson*; and whether the seals were torn from the agreement upon a mistaken supposition, &c.

The defendant's counsel objected to reading the agreement, on the ground that the seals had been torn off, by which its force was utterly destroyed. The judge overruled the objection, received the agreement as evidence, and submitted the questions of fact to the jury, who found for the plaintiff $431,75.

*J. J. Danforth*, now moved for a new trial, on the ground (among others) that the instrument in question became

void, by the destruction of the seals in the manner proved. He cited to this point, 1 *Gall. Rep.* 69 ; *Shep. Touch.* 69 ; *Dy.* 112 ; 11 *Rep.* 27 ; *Perk. s.* 135,6 ; 2 *Bl. Com.* 308 ; 5 *Cowen,* 368.

*M. T. Reynolds,* contra, cited 2 *Rol. Abr.* 29, ( *U* ) *pl.* 5 ; *Moore,* 35, *pl.* 116 ; 1 *Rol. Rep.* 40 ; 5 *Rep.* 119, *b.;* *Dy.* 59 ; *Cro. Eliz.* 120 ; *Palm.* 403 ; 6 *East,* 309, 311 ; 4 *T. R.* 339, *per Bull. J.* ; 3 *T. R.* 151, 153, *note* ( *c* ).

*Curia, per* SUTHERLAND, J. The questions of fact were properly submitted to the jury. They have found that the defendant has not paid to the plaintiff the amount, which by his covenant he was bound to pay ; and that the seals were torn from the agreement, by *Jackson,* under the mistaken supposition that the defendant had paid to him, upon that agreement, $200, on the 1*st* of *June,* 1808, when, in truth, that payment was made by the plaintiff, and not by the defendant ; and had been credited by *Jackson* to the defendant, by mistake. We assume, therefore, that the sum found by the jury is justly due to the plaintiff, upon the contract ; and the question then is, whether his right of action is gone, in consequence of the seals having been torn off, under such circumstances.

It was a mutual agreement, signed by both parties. *Rees* covenanted to sell a farm to *Overbaugh ;* and *Overbaugh* covenanted to pay him for it. There was no counterpart ; and the agreement itself, instead of being retained by either party, was left in the hands of *Jackson,* as he expresses it, *for the benefit of both parties.* He did not hold it, therefore, exclusively as the agent of the plaintiff ; nor had he any authority to receive *the whole consideration money.* His right to receive any portion of it did not result from the fact of his having the possession of the contract ; for that he received as the agent of both parties, for safe keeping only. But *Rees,* the plaintiff, authorized him to receive $2500, and pass it to his credit. That, then, was the extent of his authority ; and he had no power to cancel the contract, or to interfere, in any other way,

with the plaintiff's right to recover the remaining balance of $500.

In tearing the seals from the agreement, therefore, he did not act as the authorized agent of the plaintiff, but as a stranger.

The ancient doctrine, that an alteration, or spoliation of a deed, by a stranger, or by accident or mistake, without the privity or consent of the party interested, destroys it, has been materially modified, if not substantially exploded, by modern decisions. (*Henfree* v. *Bromley*, 6 *East*, 309. *Master* v. *Miller*, 4 *T. R.* 339, *per Buller, J.* 3 *T. R.* 151, 153, *note.*)

The second resolution in *Piggot's* case, (11 *Coke*, 27,) is, " That when any deed is altered, *in a point material, by the plaintiff himself, or by any stranger*, without the privity of the *obligee*, be it by interlineation, addition, erasing, or by drawing a pen through a line, or through the midst of any material word, the deed thereby becomes void."

In *Whelpdale's* case, (5 *Coke*, 119,) it is said, " That in all cases where the bond was once the deed of the defendant, and aftewards, before the action brought, becomes no deed, either by rasure or addition, or other alteration of the deed, *or by breaking off the seal*, the defendant may safely plead *non est factum ;* for, without question, at the time of the plea, which is in the present tense, *it was not his deed.*" And the case of one *Hawood* is there mentioned, in which, in an action of debt on bond, he had pleaded *non est factum*, and before the day of appearance of the inquest (or trial) by the negligence of the clerk, in whose custody it was, *rats did eat the label* by which the seal was fixed, the justices charged the jury, that if they should find that it was the deed of the defendant *at the time of plea pleaded*, they should give a special verdict ; which was done ; and the plaintiff recovered. (*Dy.* 59, *a. S. C. and notes, id.* 112, *a.*)

Mr. Justice *Buller*, in *Master* v. *Miller*, (4 *T. R.* 338-9,) considers this doctrine as having owed its origin very much to the technical forms of pleading, applicable to deeds

alone. The plaintiff, in such cases, must make a *profert* of the deed *under seal;* and the deed or profert produced, must agree with that stated in the declaration, or the plaintiff must fail. A profert of a deed without a seal, will not support the allegation of a deed with a seal. But he remarks, that it is not universally true that a deed is destroyed by an alteration, or by tearing off the seal. In *Palm.* 403, a deed which had erasures in it, and from which the seal was torn, was held good, it appearing that the seal was torn off by a little boy. So in any case where the seal is torn off by accident after plea pleaded. And in these days, he continues, I think, even if the seal were torn off before the action brought, there would be no difficulty in framing a declaration which would obviate every doubt upon that point, by stating the truth of the case. It was not settled in *England,* that a deed *which had been lost or destroyed by time or accident,* could be pleaded, according to the truth of the case, without *profert,* until the case of *Read* v. *Brookman,* (3 *T. R.* 151;) and *Gross, J.* dissented from that decision. (Vid. *Soresby* v. *Sparrow,* 2 *Str.* 1186. *Whitfield* v. *Faugset,* 1 *Ves.* 387, 389. *Totty* v. *Nesbitt,* and *Matison* v. *Atkinson,* 3 *T. R.* 153, note (*c*).)

Lord *Kenyon,* in *Read* v. *Brookman,* says, that which was supposed to be the old law, was founded on a mistake; and that the law of the country has, in this respect, in modern times, been better adapted to general convenience.

If a deed may be rendered available to a party, notwithstanding *its total* destruction, upon what principle can he be deprived of the benefit of it, when it has suffered a *partial injury,* either from accident, or the act of a stranger, over which he had no control? Lord *Kenyon,* in *Master* v. *Miller,* (4 *T. R.* 329, 30,) seems to admit, that an alteration in a deed, by accident, would not destroy it.

In *Henfree* v. *Bromlee,* (6 *East,* 309,) lord *Ellenborough* expresses a decided opinion upon this point. The question there was, whether an award was void, in consequence of an alteration made by the umpire in the

amount awarded, after he signed the award, and delivered it to his attorney, for the purpose of being delivered to the parties. The alteration consisted in running his pen through the £57, the amount originally awarded, and inserting the sum of £66, leaving the £57, however, still legible. It was contended by *Erskine & Pooley*, that the alteration in the award vitiated it altogether; and they referred to the second resolution in *Piggot's* case, (11 *Coke*, 27,) in support of their argument. But lord *Ellenborough*, for the whole court, said, " I consider the alteration of the award, by the umpire, after his authority was at end, the same as if it had been made by a *stranger, a mere spoliator ;* and I still read it with the eyes of the law, as if it were an award for £57, such as it originally was. If the alteration had been made by a person who was interested in the award, I should have felt myself pressed by the objection ; but I can no more consider this as avoiding the instrument, than if *it had been obliterated or cancelled by accident.*"

In *Cutts* v. *The U. States*, (1 *Gall.* 69,) it was held that a deed is not avoided by the seal being torn off fraudulently, or innocently by the *obligor ;* but may be declared on as a subsisting deed. Judge *Story* has there collected and reviewed all the cases upon this subject ; but it was not necessary for him to decide what would be the effect of an alteration in a *deed by a stranger ;* and he therefore expressed no opinion upon that point.

The case of *Williams* v. *Crary*, (5 *Cowen*, 368,) is in no respect analogous to this. There the bond was cancelled *by the defendant himself*, in obedience to the express directions of his testatrix, the plaintiff having complied with the condition upon which the executor was directed by the will to cancel it. We held, that the executor could not afterwards avail himself of that bond, by way of set off against a demand of the plaintiff ; and with a view to that state of facts, we remarked, that " after cancelling the bond, the defendant cannot avail himself of it, by way of set off, at law. If it was surrendered through

mistake, or misapprehension of his rights, the defendant's remedy must be sought in a different way."

We are, therefore, of opinion that the motion for a new trial be denied.