THE POUGHKEEPSIE AND SALT POINT PLANK ROAD COM-
PANY *vs.* GRIFFIN.

THE SAME *vs.* ALLEN.

THE SAME *vs.* CLAPP.

Agreements to take, and pay for, stock in a plank road company, executed prior to the organization of the company, are operative and binding, although the subscribers never sign the articles of association. BROWN, J., dissented.

The fact that the corporation was not *in esse* when the agreement was signed, is not of itself a sound objection to the right to maintain an action upon it.

The future advantages to accrue to the stockholders from the formation of a corporation, and the rights acquired by the subscribers, to sign the articles of association, and elect the directors and thus to shape and control the company, constitute a sufficient consideration for the agreement to take, and pay for stock.

Future advantages, necessarily resulting from the performance of an agreement, constitute an adequate consideration.

Subscribers to the capital stock of a plank road company are not released from their engagements by the passing of an act, by the legislature, conferring additional privileges upon the company.

THESE were appeals, by the defendant in the first suit, and by the plaintiffs in the second and third, from judgments entered at a special term, after trials at the circuit. The actions were brought upon the following agreement, signed by the defendants, to recover the amounts severally subscribed by them to the capital stock of the plaintiffs' company :

"Poughkeepsie and Salt Point Plank Road—with the privilege of extending the same to Clinton Corners. To form an association under the plank road act, so called, passed May 7th, 1847, in pursuance of public notice, with a capital of $25,000, divided into 500 shares of $50 each.

The subscribers severally and mutually agree to take and pay for the shares of stock set opposite our names, to the directors of the company hereafter to be formed under said act, in such manner and at such times and places as such directors may direct, for the purpose of constructing a plank road from the village of Poughkeepsie to Salt Point in the town of Pleas-

ant Valley, in Dutchess county. Dated March 8th, 1853, in Pleasant Valley."

The defendant Griffin subscribed ten shares, to this paper; Allen five shares and Clapp two shares, the value of each share being fifty dollars. The complaints averred the due organization of the company, the construction of the road and the making of the calls for the payments upon the stock, notice thereof to the defendants, and their refusal to pay, and demanded judgment for the amounts of the several calls, with interest. The answers of the defendants contained a general denial of the facts stated in the complaint, and set up matters of defense mentioned in the opinion of the court. They also alleged that after the subscription by the defendants, viz, in March, 1854, the plaintiffs, without their knowledge or consent, procured an act to be passed by the legislature changing said plank road into a turnpike, and extending the time for finishing the same, &c., thereby entirely changing the nature and character of the corporation and the business which the company was formed and organized to carry on, &c.

On the trial it was admitted that the plaintiffs petitioned the legislature for the passage of the act of 1854; that they had not laid any plank on their road, and that they had erected gates and demanded and taken toll pursuant to said act; that said road was constructed to Salt Point, and no further. The defendants by their counsel moved for a nonsuit. 1. Because the subscription and promise to take stock was for a plank road to Salt Point, and the company was organized with the right to extend the road to Clinton Corners. 2. Because the act of 1854 changed the nature of the company, and discharged the subscribers not consenting thereto. The court denied the motion, and the defendants excepted.

*James Emott,* for the appellant in the first suit. I. The nonsuit should have been granted for the reasons stated at the trial. (1.) The caption of the subscription was not a part of the contract between the company and the subscribers. At most it was only notice of the intentions of the company, and

this is not a question of notice but of contract. The agreement was to take stock in a company to build a road " to Salt Point, in the town of Pleasant Valley." The extension to Clinton Corners was made and added after the subscription, not in the manner prescribed by the statute, not by consent of two-thirds of the stockholders, but on the mere motion of the directors. This distinguishes the present case from the case of *The Schenectady and Saratoga Pl. R. Co.* v. *Thatcher*, (1 *Kernan*, 102.) The present case is one of a plain departure from the original contract and organization—a different road built from that to which the plaintiff subscribed. This discharges the sub-. scribers not consenting to the modification, and the defense rests upon the principle of the inviolability of contracts, and not upon the greater or less importance or probable advantage or disadvantage of the change. (*See opinion of Johnson, J., in Schy. and Sar. Pl. R. Co.* v. *Thatcher*, 1 *Kernan*, 114 ; *Macedon and Bristol Pl. R. Co,* v. *Lapham*, 18 *Barb.* 312. *See Hartford and New Haven R, R. Co.* v. *Croswell*, 5 *Hill.* 383.)    (2.) The act of 1854 was also a total change of the ·character of the company, and an interference with the contract, and under the reasoning of the case cited above, this also constitutes a defense. The conditions, objects and operations of the company were all changed. It was converted from a plank road into a turnpike, and the time for its construction changed, new privileges granted and new liabilities incurred. (*Dartm. Coll.* v. *Woodward*, 4 *Wheat.* 518.)

II. The same points were clearly taken after the evidence closed, and ruled in the same way as before.

III. The evidence clearly established that Cornell, who presented the subscription to the defendant, represented and promised that the road should be a plank road, and should be built on the route which the defendant proposed. Both these representations were false, and the promises were not complied with. Cornell, in making them, was the company's agent, and the subscription procured upon them was void. (1.) Because it was obtained by false and fraudulent representations. (2.) Be-

Poughkeepsie and Salt Point Plank Road Co. *v.* Griffin.

cause the breach of these engagements and conditions involved a failure of the consideration.

IV. The name of the defendant was affixed to the paper not by himself, but by Cornell. Cornell, therefore, in signing acted as the defendant's agent, while at the same time he was agent for the company in procuring the subscription. If he exceeded his authority, under these circumstances, the defendant cannot be held for his acts. The evidence shows that he had no authority to sign a subscription, except to a plank road, and on a particular route. The paper which he did sign was beyond the scope of his authority.

V. All these defenses were ruled insufficient by the judge, and therefore there should be a new trial.

VI. The paper alleged to have been signed by the defendant was without consideration and void, as claimed by the defendant on the trial. The defendant never acted as a member of the company; never took any scrip nor signed any articles of association. There was no mutuality in the alleged contract, and the company could not have been compelled to issue or deliver stock to the defendant. (*Troy and Boston R. R. Co.* v. *Tibbits*, 18 *Barb.* 297.) There was no company when the paper was signed. That was dated March 8th, and the articles of association March 25th, 1853. (*Union Turnpike Co.* v. *Jerkins*, 1 *Caines*, 381. *Goshen Turnp. Co.* v. *Hurtin*, 9 *John.* 217. *Angell & Ames*, 475, *ch.* 15, § 2.)

*L. B. Sackett*, for the respondents in the first suit. I. The signing of the contract by the witness, Cornell, in the defendant's presence, and at his request, was a signing by the defendant. It being done in the presence of the defendant, and he knowing the contents of the paper, it was the defendant's own act and deed. (*Dunlap's Pal. on Agency, p.* 1, *note a.*) If the party is present and exercises the power of judging himself, there is no agency. The signing by Cornell's hand was the same as if any person affixed his name by his request, or he had made his mark.

II. No condition out of the contract so signed is available to

exonerate the defendant, or alter the terms of the subscription. (1 *Greenl. Ev.* §§ 275-7. 15 *Eng. Law and Eq. Rep.* 376. 8 *Barb.* 206. 11 *id.* 147.)

III. Cornell was not the agent of the plaintiff for the purpose of making verbal conditions out of the contract, and in any event his power was limited to the terms of the subscription. (1.) There was no company then in existence, of which he could be agent. (2.) The subscription, if void, for the reasons the defendant offers, would operate as a fraud upon every other subscriber who signed on the faith of the defendant's name ; and thus if the contract is held to be void, the fraud is the other way. (3.) There is no principle upon which such a promise of Cornell could operate as a fraud upon the defendant. He knew (for such is the law) that all previous or contemporaneous talks were merged in the contract, and therefore did not rely upon them, and was not misled or deceived. To call this a fraud, would be to hold that every verbal promise or undertaking different from the written contract of the parties, might be called a fraud ; and thus, while it cannot vary, it can yet destroy it *in toto.* (4.) Cornell swears he made no such condition, and is confirmed by the defendant's confession to Smith, " that the boys had backed out." The fact has been found by the judge, in effect, that no such condition was made.

IV. The defendant's agreement corresponded with the articles of association. If the latter confer upon the company the right to extend the road, so does the agreement.

V. The act for the relief of the Poughkeepsie and Salt Point Plank Road Company, (passed March 28, 1854,) giving 5 years further time to complete the road, and authorizing the erection of gates upon it, does not absolve the defendant from his promise to take stock. (*Schen. and Saratoga Pl. Road. Co.* v. *Thatcher,* 1 *Kernan,* 108. *The Troy and Rutland R. R. Co.* v. *Kerr,* 17 *Barb.* 581. *Northern R. R. Co.* v. *Miller,* 10 *id.* 283. The legislature had a right to amend the general law under which this company is formed. (*Laws of* 1847, *ch.* 210, § 51.)

Poughkeepsie and Salt Point Plank Road Co. *v.* Griffin.

*L. B. Sackett*, for the appellants (plaintiffs) in the second and third suits. I. The preliminary agreement signed by the defendants is sufficient to make them liable to pay to the company the stock so subscribed, without signing the articles. (*Hamilton and Deansville Pl. R. Co.* v. *Rice*, 7 *Barb.* 157. 17 *id.* 579, 567.)

II. The agreement is valid on its face. No objection was taken to it on the trial, and none should be raised here. If invalid, the plaintiffs should have been nonsuited. It is not subject to the objection that it lacks "mutuality." It derives it force from the statute, and not from the common law; is authorized by section 1, act of 1847, and may be sued on, section 39. (7 *Barb.* 165.) The "mutuality" necessary to a common law contract is impossible in such cases, because there is yet no company to contract, at the time of signing. The case in 18 *Barb.* 318, *Macedon and Bristol Plank Road Company* v. *Snediker*, is not in conflict with this. That was the case of an agreement to buy stock of the company on certain conditions, by a stranger; he refused to fulfill, and the court held the agreement void, because the company was not mutually bound. The contract rested on the common law, and not on the statute, and was not between the company and an original subscriber. It was in no sense a subscription to stock, but a contract to buy stock of the company on certain conditions. The subscription is not conditional. The words "provided said road be made on what is called the west route, through lands of Doty, Cooly, &c." is descriptive of the route surveyed, and where it was actually made. But a condition precedent is good. This is expressly decided in 17 *Barb.* 579. (*See* 572; 2 *Hall*, 239.) It does not appear but that all the subscriptions in this case were precisely alike, and merely describe the route. In 18 *Barb.* 319, Welles, J., mistakes the statute and miscites it. He says, "persons become subscribers for stock by subscribing the articles of association." This is not so. They may be subscribers and corporators *without signing the articles of association at all.* (*See* 1*st point and authorities. Act of* 1847, § 1, § 39.)

III. The company being legally organized and the calls for stock proved, the defendants admit their liability upon the above facts and law, unless they are discharged, either (1.) By an alteration of the contract on the part of the company, by inserting in their articles of association, in addition to what the defendants signed, a *privilege to extend the road to Clinton Corners*, or (2.) By procuring a law in 1854, authorizing them to lay down the plank at any time within ten years, instead of five, and to erect gates and receive tolls within that time, &c. on the road without planking it. The principle is the same in each case, i. e. it is alleged that the plaintiffs have so altered the rights and liabilities of the defendants without their consent, as to absolve them from the performance of their contract, and thus furnishing a legal discharge. Or, in other words, it is said the plaintiffs are seeking to enforce a different contract from that into which the defendants entered when they subscribed. As to the first point; the insertion into the articles of association of a privilege to extend the road is nugatory, and therefore of no effect. Section 1 of the act of May 7, 1847, provides that the articles of association shall state the place from, and to which, the proposed road is to be constructed. The corporators should state where they intend to make their road, not where they shall have the privilege of making it; otherwise it cannot be determined how much stock must be subscribed before the election of directors, &c. And 2d. The privilege of going to Clinton Corners, if exercised at all, must be exercised in the manner prescribed by law. (*See* § 1, *Laws of* 1849, *p.* 374.) 3. The supervisors have fixed the route and the road has been laid out by the commissioners and cannot be altered. The defendants subscribed after the election of directors and the formation of the company. By so doing, they adopted the articles of association, and cannot object that they contain the privilege to extend the road to Clinton Corners. (*Fort Edward and Fort Miller Plank Road* v. *Payne,* 17 *Barb.* 567.) The subscription itself evidently refers to the notice (to open books) which had been previously published, and that contains the privilege of extension. The principal case cited, and the strongest case,

is the *Hartford and New Haven Rail Road Co.* v. *Croswell,* (5 *Hill,* 385,) where the company without the defendant's consent procured an act authorizing them to enter upon an entirely different business from that originally intended, and to become carriers *by steam boats on the water* instead of carriers *by railway on the land*—a total change, and as wide from the original intention of the parties as speculation in city lots would have been. And it was upon this ground the contract was declared void. The principle which governs in all the cases seems to be as to whether the alteration is radical and essential, and detrimental to the party contracting. *Irvin* v. *Turnpike Co.,* (2 *Penn. R.* 246,) in fact decides this case. There the termini were fixed and remained, but the route and location were radically altered, and the defendants claimed that such route, through their lands, was an essential benefit contemplated by them, which was taken away by the alteration, &c. The court held them liable to pay, and this though the change was actual, (not a privilege never exercised,) and greatly to their prejudice. The change was not deemed radical, although it was detrimental. In *Gray* v. *Monongahela Nav. Co.,* (2 *Watts & Serg.* 157,) the alterations were much more extensive and radical than here. It was an alteration of the charter, by which additional privileges were granted to the company, and additional responsibilities incurred by the company, and yet being in furtherance of their general and legitimate business, it did not discharge the defendant. These two cases illustrate the principle, and decide more than is necessary in this case. Here there is no radical alteration in the objects of the company, nor any burden imposed. They have two privileges—one to extend the road a short distance if at any future time they deem it expedient; a privilege of which they have not availed themselves ; and also to lay down plank within ten instead of five years, which it is not certain they will adopt; in the mean time taking toll on the road, which actually goes between the points, and on the exact route contemplated and described in the contract. Shall these naked privileges vitiate, when the alteration of a route in fact was held not to do it ? There is no principle and no authority for this. The case

in 8 *Mass. R.* 268, is not in point.  The road was altered to a different place, in fact was a different road ; as if the Stormville Plank Road Company should procure legislative authority to abandon their own road to go to Rhinebeck !  Surely such a . case is no authority for the doctrine advanced by the defendants. The change was *radical and entire.*  It is said by counsel, ·that the privilege of going beyond the terminus may be detrimental to the defendant—if they may go a mile, they may go fifty !  This was said in 2 *Penn. R.* 466, where they *alter the whole route,* preserving the terminus.  The route originally contemplated might be profitable, and the one adopted not, but the court said this was no reason that it might be detrimental to the defendant, and did not exonerate him.  And beside, if the reason is sound, it would apply as well to a rod, or a foot, as a mile.  As the proof stands, *non constat,* Clinton Corners is not 10 rods off !  But I do not conceive that this alters the case.  It is simply a privilege to extend the same road, involving no expenditures not incidental to all of the rest of it, and entirely within the scope and spirit of the original undertaking ; and if done must be according to the provision of the statute.  (*Laws of* 1849, *p.* 374, § 1.)

IV.  As to the legislative act of 1854, it does not release the defendants from liability on their subscription.  (*Schenectady and Saratoga Plank Road Co.* v. *Thatcher,* 1 *Kern.* 102.  *The Troy and Rutland Railroad Co.* v. *Kerr,* 17 *Barb.* 581.  *Northern Railroad Co.* v. *Miller,* 10 *id.* 283.)  In the general law under which this company is incorporated, the legislature have reserved the power to alter, amend or repeal the act, or to annul any corporation formed under it.  (*Laws of* 1847, *ch.* 210, § 51.) Every one who enters into such a company is aware of the reservation of this power, and of the possibility of its exercise, and must trust to the wisdom and justice of the legislature that this power will not be abused.  (1 *Kernan,* 114.)  In the case of the *Hartford and New Haven Railroad Co.* v. *Croswell,* (5 *Hill,* 383,) the legislature had reserved no such power.

V.  If, as the defendants contend, the act impairs the obligation of the contract, then it is unconstitutional and void, for it cannot

be valid and do this.   If a good valid law, it does not vitiate the contract, and the defense fails.   If invalid and unconstitutional, the same result follows ; it works no evil to any one.

VI.  This company having been duly organized and having expended a large sum of money in the construction of their road upon the faith of the subscription of the defendants and others, ought not to be deprived of the right to enforce the payment of the subscriptions, because the agreements for stock do not happen to contain the words of the articles of association, to wit, " the privilege to extend the road to Clinton Corners ;" a clause which does not of itself confer any power, and if it did, no disposition on the part of the company to exercise it has been shown.   On the contrary, it appears that they have located their road upon the line, and have fixed its termini at the points, designated in the defendants' agreement.   None of the cases recognize the right of a stockholder to complain where he has not been injured.   (1 *Kernan*, 109.)

*Doty & Storrs*, for the respondents (defendants) in 2d and 3d suits.   I. The court found, as a question of fact raised by the pleadings and evidence in this case, that the defendants did not subscribe for stock in the company organized by the plaintiffs.   This court will not interfere with that decision.   (*Mann* v. *Witbeck*, 17 *Barb.* 388.)

II.  The subscription of the defendants was conditional.   The plaintiffs were not bound to perform the contract made with the defendants.   There was, therefore, no mutuality of promise at the time of the subscription, and the defendants cannot be held. (*Macedon and Bristol Plank Road Co.* v. *Snediker*, 18 *Barb.* 317.   *Utica and Schenectady Rail Road Co.* v. *Brinckerhoff*, 21 *Wend.* 139.)   This objection may be taken at any time. (7 *Barb.* 581.)

III.  Even could it be found that the defendants became subscribers for stock in the company named as plaintiffs in this cause, then the inserting in the articles of association under which said company is formed, " the privilege to extend the road to Clinton Corners," was such a change of the defendants'

contract as would release them from all obligations arising out of their subscription, the privilege to extend being a part of the original object of the plaintiffs, and granted not by an act of the legislature after the formation of their company, but in the very inception of the company. This has been so held since the formation of the company. (*Bristol Plank Road Co.* v. *Lapham,* 18 *Barb.* 312. *Troy and Boston Rail Road Co.* v. *Warren, Id.* 310. *Same* v. *Tibbits, Id.* 297. *See* 10 *id.* 278.)

IV. The procuring the passage of an act by which the whole object and purpose of the original company was changed, released the defendants from all obligations to said company, even had they been stockholders. (*Sess. L.* 1854, *ch.* 85. *Hartford and New Haven Rail Road Co.* v. *Croswell,* 5 *Hill,* 384. *Bristol P. Road Co.* v. *Lapham,* 18 *Barb.* 312.)

V. The case shows that Lamoree, who obtained the names of the defendants, was not authorized to act as an agent of the plaintiffs ; that he procured subscriptions for a different purpose than the one organized by the plaintiffs, entirely without their knowledge or consent, and in a manner different from that prescribed by the plaintiffs.

VI. It can make no difference whether the plaintiffs have extended their road to Clinton Corners or not ; having secured the privilege to do so, it is enough to release the defendants. (*Sess. Laws of* 1855, *ch.* 546, § 2.)

S. B. STRONG, J. These actions were instituted upon certain agreements, subscribed by the defendants severally, whereby they promised to take, and pay for, the number of shares set opposite to their names respectively, in the plaintiffs' company, at such times and places as the directors might order. The agreements were signed before the organization of the company. After such organization the directors called upon the defendants to take the stock, and to pay for it by installments at certain times, which they refused to do. The judge who tried the causes gave judgment for the plaintiff in the first above entitled suit, and for the defendants in the other two.

The principal distinction between the first and the other two

suits, and what led to the different conclusions, was that in the agreement signed by Griffin there was an express authorization to extend the contemplated plank road to " Clinton Corners ;" while that signed by Allen and Clapp did not confer the same privilege, (as it is called,) in express terms.  As, however, the latter was dated on the 16th of March, 1853, and recited that the association was to be formed *in pursuance of public notice*, and as a notice explicitly stating that the road was to be constructed to run from Poughkeepsie to Salt Point, with the privilege of extending it to Clinton Corners, had been published on the 5th of the same month, it seems to me that in effect there was no substantial difference between the two.  What was stated in the notice may be considered as substantially incorporated in the agreement referring to it.  Possibly the defendants, when they subscribed the agreement, had not seen the notice; but if a party subscribing any paper neglects to inform himself of its provisions, or those to which there is a direct reference, he is nevertheless (in the absence of fraud) bound by them.

Another position upon which the defendant Griffin relies, and which is inapplicable to the other defendants, is that it was represented to him, when he signed the agreement, that the proposed road would be constructed on a different route from that which was eventually adopted, and that he agreed to take the stock expressly upon the condition that the designated line should be pursued.  The witness who procured his subscription testified that Griffin did not say that if the road did not take the east route he would have nothing to do with it.  His two brothers, who were present at the time, testified that he did say that he would not subscribe if the road was to take the west route, (which was eventually adopted,) or words to that effect.  The difference in the recollection of these witnesses shows the expediency of the rule that parties who execute any instrument should be confined to its terms, as indicative of their intentions, and not be permitted to resort to simultaneous declarations, or (except in cases of reference) extraneous evidence. The counsel for Griffin supposes that the evidence was admis-

sible to prove fraud. But it did not go far enough to establish that charge. Declarations indicating a fraudulent design must · refer to the past or the present. Possibly the assertion of an intent which does not exist, or which is contrary to one that does, might (if it could be proved) be deemed an indication of fraud ; but there is nothing in this case to lead to the inference that there was any intentional misrepresentation. If there had been an assurance, at the time, that a particular route would be adopted, and that was not incorporated in the agreement, the compact as it reads would not be rendered inoperative by a subsequent change. Besides, as the judge has not found that any representation was made at the time, it may be that he reposed more confidence in the testimony of the plaintiffs' witness, as to the declarations, than in the recollection of the two brothers of the defendant.

It seems to me that the only important question, in all these cases, is whether as the agreements were executed before the organization of the plaintiffs' company, and the defendants never signed the articles of association, such agreements were operative and binding. The act providing for the incorporation of plank road companies (*Laws of* 1847, *p.* 216, § 1) expressly requires a subscription to the extent of five hundred dollars for each mile, in good faith, and a payment of five per cent upon the amount as preliminaries to the election of the directors and the adoption of the articles of association, and the subsequent proceedings in order to perfect the incorporation. By making the primary subscription a basis for future operations it was certainly designed to make it obligatory to some extent ; otherwise it would be illusory—worse than an idle ceremony. It could not, it is true, become at once a perfect contract, for the want of the necessary parties. But it is a proposition for a contract in transition, until accepted by the party to whom it is tendered. It is to some extent like a proposal for a contract in a letter, which becomes consummate and obligatory when accepted, and in effect dates from that time. In such cases the competency of the profferee has reference to the time of acceptance. It is enough if he has then the appropriate and necessary qual-

ification. In this case the proposal was made with a view that it should become an effective contract when the company should be organized. Its acceptance then might be presumed from its beneficial nature ; and, if not from that alone, from its having been the necessary preliminary to subsequent official action. The case of *Stanton* v. *Wilson*, (2 *Hill*, 153,) is a strong accordant authority. There the defendant subscribed to the stock of a proposed bank, on the 18th of October, 1838. The association became perfected on the first of January, 1839. The court held that the defendant was bound by his subscription. Judge Cowen said, "It is true the company did not come into existence as a corporation till several months after the defendant's subscription purports to have been made, and the power of the president to sue did not arise till that time. The contract, though dated before, must be considered as taking effect only from the 1st of January. In legal effect, then, the contract of the defendant was made on the 1st of January, and was then to pay the corporation the amount subscribed, in such installments as the subscription provided for." This decision is mentioned with approbation, and the same rule is laid down in *The Hamilton and Deansville Pl. R. Co.* v. *Rice*, (7 *Barb.* 157.) In that case the defendant had subscribed for the stock at the opening of the books, but had not signed the articles of association. It was nevertheless held that he was liable. The court say, " we think, too, that the fact that the corporation was not *in esse* when the agreement was signed is not of itself a sound objection to the right of maintaining an action upon it." The case of the *Trustees of Farmington Academy* v. *Allen*, (14 *Mass. Rep.* 172,) is to the same effect. The decision in *The Troy and Boston R. R. Co.* v. *Tibbits*, (18 *Barb.* 297,) is the other way, upon the facts, although not upon the principle there enunciated. In that case the court say, (*p.* 305,) " that the preliminary" (subscription) " paper on which this action is sought to be sustained was not an essential and indispensable part of the machinery devised by the legislature for bringing the corporation into legal existence, nor does its vitality depend in any measure upon it." I doubt that, even in the case then

before the court; it is certainly inapplicable to the plank road act, for that provides that *when* the stock shall be subscribed, and the per centage thereon paid as therein required, *then* the *subscribers* may, upon due and proper notice, elect the directors, and *thereupon* they shall subscribe the articles of association, and adopt the other requisite subsequent proceedings to constitute them a corporation. Now, with all deference, it seems to me that the preliminary subscription is a necessary and indispensable part of the machinery for the construction of the corporation, without which it can assume neither form nor vitality. I am satisfied that it is something substantial, and that upon the adoption of the subsequent measures it becomes a legal entity.

It is said that there is a want of the requisite consideration to render the agreement valid. If by that it is meant that there is not a certain instantaneous advantage to the subscriber, it is so far true; but if that should be a fatal objection no contract based upon a future consideration could be enforced, as there can be no certainty as to any thing depending upon human agency. It is enough, however, to support an executory contract, that upon the contingency of its performance the requisite consideration must necessarily arise. Now in this, case the subscription money could not be raised, or its payment exacted, without the investiture of corporate rights. Future necessarily resulting advantages from the performance of an agreement constitute an adequate consideration. Besides, a party who subscribes the preliminary paper by that act acquires certain rights. The subscribers elect the directors, and have the privilege, which cannot be denied to them, to form and subscribe the articles of association; and thus they have, by themselves or their agents, the formation and control of the company. Surely all these advantages are sufficient to bind their engagement.

The act of March 28, 1854, (*Laws of that year, p.* 164,) merely extends the time for completing the road, and authorizes the company, until it shall be completed, to receive certain tolls. That act was passed upon the application of the com-

Pine *v.* Rikert.

pany, and was beneficial to it. Besides, the legislature had the right to modify the original act, and could exercise it so long as there should be no substantial invasion of the rights originally conferred. I am satisfied that the subscribers were not released from their engagements by the *additional privileges* conferred upon the company.

The judgment in the suit against Griffin should be affirmed. In the suits against Allen and Clapp the judgments should be reversed, and new trials had; costs to abide the event.

Rockwell, J., concurred.

Brown, J., dissented.

Judgment accordingly. —

[Dutchess General Term, April 8, 1856. *Brown, S. B. Strong* and *Rockwell,* Justices.]