THE ERIE AND NEW YORK CITY RAIL ROAD COMPANY *vs.*
OWEN.

There are two modes in which a person may become a stockholder in a rail
road company, incorporated under the general rail road act, viz: by sub-
scribing the articles of association and becoming a member of the corpora-
tion, as provided in sections 1 and 2, of the statute ; or by subscribing to
the capital stock, in the book opened by the directors, after the corporation
is in existence.

No one who has only signed articles of association before the corporation came
into being, is a corporator, or a member of the corporation, unless the arti-
cles so signed by him have been filed in the office of the secretary of state,
as required by the statute.

Where duplicate sets of articles are used for the purpose of obtaining subscrip-
tions, and one set, signed by several persons, and accompanied by the proper
affidavit, is filed in the office of the secretary of state, while the other set,
subscribed by different individuals, is not so filed, the subscribers to the
latter paper do not become members of the corporation, and are not liable
upon their subscriptions.

APPEAL from a judgment entered upon a trial by the
court. Articles of association, pursuant to the general
rail road act of 1850, were prepared, dated July 11th, 1851,
and signed by some 250 persons, promising to take an amount
of stock which was sufficient, according to the statute. A
proper affidavit was annexed to the articles, taken March 8th,
1852, and those articles were filed in the office of the secre-
tary of state, on the 12th of March, 1852, and the plaintiffs
became duly incorporated. Articles exactly like those filed
were also used for the purpose of obtaining subscriptions, &c.,
and the defendant became a subscriber to one of these articles,
for two shares, some time prior to the making of the affidavit
to the articles which were filed.

The articles subscribed by the defendant, and some other
persons, were never filed in the office of the secretary of state.
The action was brought to recover the amount of the defend-
ant's subscription. The court directed judgment for the de-
fendant, and the plaintiff appealed to the general term.

*Hazeltine & Clark*, for the plaintiff, cited the *General Rail Road Act*, §§ 1, 2, 3, 4 *and* 5; 16 *N. Y. R.* 451, 457; 7 *Barb.* 157; 2 *Hill*, 153; 1 *Kern.* 102; 20 *Barb.* 155; 21 *id.* 454, 541.

*Cook & Lockwood*, for the defendant, cited the *Statute*, and 18 *Barb.* 297.

*By the Court*, MARVIN, P. J. The case presents a single question. The projectors of a rail road prepared articles of association in due form, in which thirteen directors were named, and as a matter of convenience, duplicated those articles for the purpose of obtaining subscribers. To one set of these articles, a sufficient number of subscribers, and a sufficient amount of stock were obtained, to justify the making of the affidavit required by the general rail road act, and such affidavit was made, and the articles and affidavit were filed, and the plaintiff became duly incorporated. The defendant and some others subscribed a set of the articles, which were not filed in the office of the secretary of state, and to which no affidavit was annexed, prior to the making of the affidavit and filing the articles. Thus, the precise difference between this case and *Lake Ontario &c. Rail Road Co.* v. *Mason*, (16 *N. Y. Rep.* 451,) is, that in the latter case, all the duplicate articles were attached together, and with the affidavit appended, were filed in the office of the secretary of state, &c. In this case, the articles subscribed by the defendant were never filed ; and this is the distinction taken by the defendant's counsel, who cited *Troy and Boston Rail Road Co.* v. *Tibbits*, (18 *Barb.* 298,) and it is supposed to be controlling in this case. In that case, the action was not founded upon a subscription to articles of association, but upon a preliminary paper, contemplating the formation of a rail road company and the election of directors, and containing divers conditions or special provisions. Some six months thereafter, articles of association were prepared, and the de-

fendant, with others, subscribed them, agreeing to take an amount of stock, much less than the amount specified in the paper upon which the action was brought. I have no doubt of the correctness of the decision in that case, that the defendant was not liable, and for the reasons assigned by Justice Wright, in his opinion, (*p.* 306 *et seq.*) The learned justice, however, regarded it as important, if not necessary, to examine the provisions of the general rail road act, (1848,) touching the organization of corporations under it. The plaintiff in that case was organized under that act. In 1850, the legislature enacted what is now the general rail road act, and the plaintiff in the present action was organized under it. There is, perhaps, no difference in the two acts, touching the precise question presented in this case, though the modes of proceeding are somewhat different.

By the act of 1850, persons not less than twenty-five in number, may form the company, and for such purposes may make and sign articles of association, in which shall be stated the name of the company, &c. and the names, &c. of thirteen directors. Each subscriber to such articles is to subscribe his name, place of business, and the number of shares of stock he agrees to take in said company. The articles of association may be filed, upon complying with certain provisions of the act, in the office of the secretary of state, &c. "and thereupon, the persons who have so subscribed such articles of association, and all persons who shall become stockholders in such company, shall be a corporation," &c. It is declared that "such articles of association shall not be filed and recorded in the office of the secretary of state, until at least $1000 of stock for every mile of rail road proposed to be made, is subscribed thereto, and ten per cent paid thereon in good faith," &c.; nor until there is inclosed or annexed thereto an affidavit of certain facts. (*Sess. L.* 1850, 211, §§ 1, 2.)

Section 4 authorizes the directors, when the articles, &c. are filed, to open books of subscription for further stock, in case the whole capital stock has not been subscribed. The de-

Erie and New York City R. R. Co. *v.* Owen.

fendant was not a subscriber for stock upon any book of subscription opened after the corporation came into being. If he is liable at all, he is so, as one of the persons acting in the formation of the company. He subscribed one set of the articles of association, but these articles were never filed; others, precisely similar, were filed with the required affidavit annexed. Did the defendant become a corporator?

The persons who are authorized to form the company are authorized to make and sign articles of association, and then, upon complying with the provisions of the second section, "such articles of association may be filed in the office of the secretary of state, who shall indorse them on the day they are filed, and record the same in a book, to be provided by him for that purpose; and thereupon the persons who have so subscribed such articles of association, and all persons who shall become stockholders in such company, shall be a corporation by the name specified in such articles of association," &c. Let us now read the second section. "Such articles of association shall not be filed, &c., until at least $1000 of stock for every mile of road proposed to be made, is *subscribed thereto*, &c., nor until there is indorsed thereon or annexed thereto, an affidavit of certain facts. It is quite clear that there must be $1000 of stock per mile, subscribed to the articles of association filed; and it is also entirely clear that those persons who have subscribed stock to the articles filed, become corporators and form a corporation. Are those who have signed articles of association not filed, and before any are filed, and which are copies or duplicates of those filed, excluded as members of the corporation? or, in other words, are they liable to the corporation upon such subscription? I propose to examine the cases cited by the plaintiff's counsel, before I express an opinion upon the question presented. In *Stanton, president of the Albany Exchange Bank,* v. *Wilson,* (2 *Hill,* 153,) the defendant subscribed stock to the original articles of association, which were used in organizing the banking association, in the manner provided by the statute.

The action was upon the subscription, and in the name of Stanton as president, and the question decided was that the action could be maintained in the name of the president. The court refer to §§ 15, 16 and 21, of the act authorizing the business of banking. (*Laws* 1838, *ch.* 260.)

In the *Hamilton and Deansville Plank Road Co.* v. *Rice,* (7 *Barb.* 159,) the action was upon a subscription to the capital stock, made in one of several books opened and used for that purpose. Articles of association were subsequently adopted and subscribed by a large number of those who had subscribed on the books, but not by the defendant. The company was duly organized, and the defendant was put down upon the books as a stockholder, and a certificate of stock was delivered to him and he accepted it. The provisions of the general plank road act, (*Sess. L.* 1847, 216,) are very similar to the provisions of the general rail road act of 1848, which Justice Wright had under consideration in the case in 18 *Barbour.*

The statute authorizes the opening of books for subscription to the stock, and when a sufficient amount is subscribed, the subscribers may elect directors, "and thereupon they shall severally subscribe articles of association, in which," &c. "The articles of association may, on complying with the provisions of the next section, be filed in the office of the secretary of state; and thereupon, the persons who have so subscribed, and all persons who shall, from time to time, become stockholders in such company, shall be a body corporate," &c. Numerous questions were raised in the case, and considered in the opinion of Gridley, justice, having relation to the form of the promise, the consideration for it, and the non-existence of the corporation at the time it was made. Upon the question which it is supposed is like the one we are considering, he says: "A subscription to any legal and valid instrument by which a party engages to become a member of the company when organized, and to pay a given sum which is to be a part of the capital stock, followed up by an acceptance of a

certificate for stock, will make such subscriber a member of the corporation. The acceptance of the stock certificate is a waiver of any informality that may have intervened, short of an absolute defect of jurisdiction."

Justice Wright, in *Troy and Boston Rail Road Co.* v. *Tibbits*, (18 *Barb.* 308,) refers to this case, and distinguishes it by the remark, that a controlling feature of the decision was that the defendant, though subscribing before, after the organization of the company, had received from the plaintiffs and accepted a certificate of stock. The question we are considering was not involved in *Schenectady and Saratoga Rail Road Co.* v. *Thatcher*, (1 *Kern.* 102.) In that case the defendant was a subscriber to the articles of association filed in the office of the secretary of state. In *Eastern Plank Road Co.* v. *Vaughan*, (20 *Barb.* 157,) the form of the promise was to Boyd and Wood, and Boyd and Wood were authorized "to transfer the subscription to a company hereafter to be formed for the purpose of building said road." Boyd and Wood transferred the subscription of the defendant and others to the plaintiff. The judge, in his opinion, says that, as he understands the proof, the original subscription of the defendant was delivered to the plaintiffs, and the defendant's name subscribed to the books by Boyd and Wood, and adds: "If Boyd and Wood were the lawfully appointed agents of the defendant for the latter purpose, and the subscription would seem to confer that power, then such subscription in the books of the company is binding and obligatory upon the defendant, and he is a stockholder of the corporation to all intents and purposes, and is as much bound as though he had signed the articles of association with his own hand."

It is true the learned justice proceeds to discuss the case on other grounds, and expressed the opinion that the defendant was liable upon the contract or subscription made by him upon its simple transfer to the plaintiff. The principal question considered related to consideration. I may refer to that case hereafter.

The next case cited by the counsel is *The Poughkeepsie and Salt Point Plank Road Co.* v. *Griffin*, (21 *Barb.* 454.) In that case the defendant signed the agreement to take and pay for stock, before the organization of the company, but did not sign the articles of association. He was held liable; the opinion of the court being by S. B. Strong, J. and Brown, J. dissenting.

The question under consideration was not included in the *Ogdensburgh &c. Rail Road Co.* v. *Frost & Spriggs*, (21 *Barb.* 541.) Nor in *The Rensselaer & Washington Plank Road Co.* v. *Barton*, reported in a note, 16 *N. Y. Rep.* 457. In that case the defendant subscribed to the articles of association which were filed, and thus used in creating the corporation.

I have thus noticed all the cases cited by counsel; and it must be confessed that they aid us very little in coming to a conclusion upon the question presented. Most of these cases arose under the plank road act, and the case in 18 *Barb.* in which Justice Wright gave construction to the general railroad act of 1848, arose under that statute. The general plans for forming corporations under the plank road act of 1847 and the rail road act of 1848, are very similar. They seem to contemplate subscriptions to stock and the election of directors previous to subscribing articles of association, which are to contain the names of the directors. In the plank road act, the subscribers may elect directors, "and thereupon they shall severally subscribe articles of association." These articles may be filed in the office of the secretary of state, "and thereupon, the persons who have so subscribed, and all persons who shall from time to time become stockholders in such company, shall be a body corporate," &c. By the general rail road act of 1848, when a specified amount of stock is subscribed &c. the subscribers may elect directors, "and thereupon they shall severally subscribe articles of association." These articles may be filed in, &c. "and thereupon the persons who have so subscribed, and all persons who

shall from time to time become stockholders in such company, shall be a body corporate," &c. Justice Wright, in *Tibbits' case*, was of the opinion that no one could become a corporator and stockholder in a rail road company unless he subscribed the articles of association, or subscribed for stock after the company was incorporated; and the corporation could only require payment from a stockholder. This case was decided in 1854. It is evident from the opinion of Justice James in *Eastern Plank Road Co.* v. *Vaughan*, (20 *Barb.* 155,) decided in 1855, that he did not regard it as necessary that the articles of association should be signed by the defendant, but that he might be liable upon a promise to take and pay for stock, made before the corporation came into being, provided it rested upon a good consideration. He takes no notice of Justice Wright's exposition of the statute, though he refers to the opinion for another purpose. In *Griffin's case*, (*supra*, 21 *Barb.* 454,) decided in 1856, it was expressly decided that an agreement to take and pay for stock in a plank road company, executed prior to the organization of the company, was operative and binding, although the subscriber never signed the articles of association. Justice Strong refers to *Tibbits' case*, and disapproves of the position that a subscription preliminary to the articles of association is not essential, and expresses the opinion that under the plank road act such preliminary subscription is a necessary and indispensable part of the machinery for the construction of the corporation; that it is something substantial, and upon the adoption of subsequent measures becomes a legal entity. He answers the objection of a want of consideration, that those who subscribe the preliminary paper acquire certain rights; they elect the directors, and have the privilege, which cannot be denied them, to form and subscribe the articles of association and thus form the company. He does not specially notice the language of the statute, that "the persons who have so subscribed (that is the articles) and all persons who shall from time to time become stockholders

in such company, shall be a body corporate." If, however, the case was properly decided, it is an authority for holding the defendant liable in this case, as will in a moment be seen. Let us first turn to the general rail road act of 1850, under which the present case arises. By this act the preliminary subscription is dispensed with, and the persons forming the company make and sign articles of association in which shall be stated the name of the company, the names of thirteen directors, the amount of stock, not less than $10,000 a mile, and many other things. And on complying with the provisions of the second section, such articles of association may be filed in the office of the secretary of state, "and thereupon the persons who have so subscribed such articles of association, and all persons who shall become stockholders in such company, shall be a corporation," &c. The second section prohibits the filing of such articles until at least $1000 of stock for every mile of rail road proposed to be made is subscribed thereto, &c. In the present case Owen, the defendant, actually signed the articles of association, in which the thirteen directors were named. The copy articles signed by him were not filed. Articles exactly in all respects like those subscribed by the defendant and upon which a sufficient amount of capital had been subscribed, and a sufficient amount of per centage had been paid, to meet the requirements of the statute, were taken and duly verified and filed, and thus the corporation came into being. I repeat, if *Griffin's case* was properly decided, I do not see why the defendant in this case is not liable. But my difficulty consists in making the defendant a corporator under the statute ; and the learned justice, in *Griffin's case,* does not meet this difficulty. As I understand the statute, only those who have subscribed the articles of association *that are filed* become corporators and constitute the corporation, and those who subsequently subscribe stock in the books opened by the directors for that purpose. The statute speaks of *such articles* of association, that is, the articles that have been filed, and

of the persons who subscribed them being a corporation. The case of *Mason,* (16 *N. Y. Rep.* 451,) does not help us a particle, for in that case the articles subscribed by the defendant were filed, and the defendant was clearly a corporator. Justice Wright, in *Tibbits' case,* takes notice that it is the *stockholders* from whom the directors are authorized to require payment, and cites § 9 of the act of 1848. I see that by § 7 of the act of 1850, the directors may require the subscribers to the capital stock to pay the amount subscribed. But I do not think this change in the language is sufficient to affect the question. The defendant was not a subscriber for stock after the company organized. He proposed to be one of the corporators, an original member of the corporation, and unless he became such he is not, in my opinion, liable. He is not liable upon any common law notion of contract. If liable at all, his liability must be found in the statute. At the time he entered into the engagement no corporation existed. There is a class of cases where an individual enters into a contract with an existing corporation or with individuals, and in such cases the contract may be governed by common law principles. Such was the case of *The Trustees of Hamilton College* v. *Stewart,* (1 *Comst.* 582.) But in the class of cases arising under special statutes, which create the liability, the case must be brought within the statute; and when it is, the common law principles touching *consideration and parties* to the contract at the time it was made, have little to do with the case. The liability is a statutory liability. As I understand the statute, in the present case, there are two modes in which a subscriber to stock may become a member of the corporation or a stockholder. One mode is by subscribing the articles of association and becoming a member of the corporation, as provided in sections 1 and 2; and the other is by subscribing to the capital stock in the book opened by the directors, after the corporation is in existence. Now if the defendant did not become a member of the corporation—if he was not one of the original corpora-

tors—he is not, in my opinion, liable. And I am of the opinion that no one who has only signed articles of association before the corporation came into being, is a corporator or a member of the corporation, unless the articles so subscribed by him have been filed as required by the statute. By omitting to file the articles subscribed by the defendant, the corporators have rejected him as a proposed member of the corporation, and have no claims upon him. .

It is not necessary to inquire whether, had he complained, he had rights which would have been protected. The judgment must be affirmed.

[ERIE GENERAL TERM, November 12, 1860. *Marvin, Knox* and *Grover,* Justices.]