## THE SODUS BAY AND CORNING RAILROAD COMPANY, RESPONDENT, *v.* CHARLES A. HAMLIN, APPELLANT.

*Subscription to stock of a corporation — when the signer is not released by a mutilation of the paper — when he cannot dispute the existence of the corporation.*

The defendant signed a printed paper whereby he agreed to take one share of the capital stock of a railroad company thereafter to be organized, the route of which was described in the paper. Other printed papers, *fac similes* of the one signed by the defendant, were signed by other persons, all of which papers were thereafter delivered to the persons proposed in them as directors with the intention that they should be used in organizing the company. Thereafter the persons having the said papers in charge cut from all of them, except one, the signatures attached thereto, pasted such signatures upon the remaining paper and filed it with the requisite affidavit annexed thereto in the office of the Secretary of State for the purpose of organizing the corporation.

In an action brought by the corporation to recover the unpaid balance of the defendant's subscription:

*Held,* that as the defendant's liability was in no way changed or affected by the mutilation of the paper signed by him, and as the paper was not mutilated by the corporation or by any person for whose acts it was responsible (the directors in what they did having acted as agents of the subscribers), the defendant ant was not released from his liability upon the agreement.

That the defendant was estopped from claiming that the corporation was not duly organized and had no existence, and that, for that reason, the action could not be maintained.

APPEAL from a judgment, in favor of the plaintiff, entered on the report of a referee.

*Hanford Struble* and *H. L. Comstock,* for the appellant.

*E. D. Mills* and *George T. Spencer,* for the respondent.

SMITH, J.:

This action is brought to recover upon an alleged subscription made by defendant to the capital stock of the Sodus Bay, Corning and New York Railroad Company. In 1872 by an act of the legislature the name of the company was changed to that in which it now sues. (Laws 1872, chap. 296.)

Prior to the organization of the company, and for the purpose of such organization, several printed subscription papers were circulated in the vicinity of the route of the proposed railroad, one of which was signed by the defendant and others, the defendant agreeing therein to take one share of the capital stock of said company and to pay therefor $100. The defendant at the time of such subscription paid ten dollars on account thereof. The several papers were in the form of articles of association as prescribed by chapter 140 of the laws of 1850, under which the company was formed. The line of the road, as described in the paper subscribed by the defendant, was from the village of Corning, by the most direct and feasible route by way of Savona, Bradford, Penn Yan, Geneva and Lyons to Great Sodus Bay, in the county of Wayne, eighty-six miles in length, " as nearly as may be." The amount of the capital stock was $1,500,000, consisting of 15,000 shares of $100 each. The several subscription papers were exact counterparts of each other, except that in one of them, which was circulated in the town of Barrington, Yates county, the words " Tyrone, Crystal Springs," were inserted between the words " Bradford " and " Penn Yan " in

the description of the route, and the length of the road was stated to be eighty miles instead of eighty-six. The number of shares subscribed for on the last mentioned paper was sixty-three. That paper was not signed by the defendant. All of said papers were, by the consent of the subscribers, delivered to the persons proposed in them as directors, with the intention that they should be used in organizing the corporation. When the persons having the papers in charge prepared them for filing in the office of the Secretary of State, the signatures, including that of the defendant, were cut off from all the papers except one and were pasted to the paper left intact, and that paper with all the signatures then attached to it, and having annexed thereto the affidavit of the directors as required by statute, was filed in the office of the Secretary of State for the purpose. of organizing the corporation. The paper to which the signature of the defendant was pasted was exactly like the one signed by him. The referee found that the signature of the defendant was so cut from the one heading and pasted to another by the persons to whom had been intrusted the duty of preparing the articles of association for filing; that it was done without the knowledge of defendant, but for convenience simply, and without any idea of changing the defendant's liability, and that the papers were used for the purposes which the defendant intended. The referee found as conclusions of law that the act of the persons who prepared the articles of association for filing, in cutting off the signature of defendant from the heading to which it was signed and pasting it to another like heading, did not avoid the defendant's subscription, and that the plaintiff is entitled to recover the amount thereof remaining unpaid. The only question in the case is raised by an exception to the latter findings. We are of the opinion that the referee was right in his conclusions upon the novel question presented. There was a mutilation and partial destruction of the paper on which the defendant's agreement was expressed, the printed heading having been severed from the signature and disposed of in some way not appearing. The signature was subsequently annexed to another printed heading which was a *fac simile* of the one which the defendant signed, so that the legal liability of the defendant was not changed in any respect, except that a necessity was created for a resort to parol evidence, to show that the two

headings were exactly alike. The fact that certain signatures were thereby affixed to the agreement, which were not on it when the defendant signed, did not affect the defendant's liability. (*Brownell* v. *Winnie*, 29 N. Y., 400.) The obligation of the several subscribers being several and not joint, the case is the same as if the additional signatures had been written on the same paper which he signed subsequently to his subscription. Indeed, to quote from the language of a learned judge in a similar case, "no good reason can be assigned why these several (subscription) papers should not be regarded as one instrument. (*Per* BROWN, J., in *Lake Ontario, etc., R. R. Co.* v. *Mason*, 16 N. Y., 451.) If the several subscription papers had been annexed together and filed as one, to effect the organization of the company, the proceeding would have been entirely regular.

Here there was not an "alteration" of the contract, as that term is commonly used, but a mutilation or destruction of the written evidence of it. Such an act, if done intentionally by a party to the contract, or by his procurement, doubtless, would destroy its validity. But if done by a stranger to the contract, it will not have that effect. (*Rees* v. *Overbaugh*, 6 Cow., 746; *Fullerton* v. *Sturges*, 4 Ohio, 530, 536; *Hunt* v. *Gray*, 10 Am. Dec., 232, and note; id., 269, and note.) The vital question then is, whether the persons who mutilated the contract were parties to it, or stood in such a relation to the corporation as that the latter is responsible for their acts. They were not parties to the contract. It purported to be an agreement with the corporation to take and pay for a certain amount of the stock of the corporation. But the mutilation was done before the corporation had come into existence. Until the corporation was formed there could be no delivery of the agreement and it had not taken effect. If the corporation had never been formed, the agreement would have been inoperative. It was said in *Fullerton* v. *Sturges* (*supra*) that an alteration, unless done after the delivery of the instrument and after it has taken effect, will not destroy its validity. The persons who mutilated the agreement were engaged with the defendant in the common object of organizing the company, and the defendant had placed his agreement in their hands to be used by them for that purpose. And in what they did, they acted, so far as appears, in good faith, and for the purpose of furthering the common design.

In preparing and filing the papers they acted as the agents of the subscribers. True, the particular act complained of was in excess of their authority, and therefore was not the act of the subscribers, but that circumstance does not make the corporation responsible for what they did. Nor is the corporation chargeable with the act, as having ratified or adopted it, the actors not having assumed to act as the agents of the corporation in mutilating the subscriptions, or in anything they did in respect to the papers. Under the circumstances, we incline to the opinion that the mutilation of the subscription papers signed by the defendant did not release him from liability. The case of *Erie and N. Y. City R. R. Co.* v. *Owen* (32 Barb., 616), cited by the appellant's counsel, is distinguishable from this. There the subscription of the defendant was not filed, and hence it was held that under the statute he was not liable. Here, if the views already expressed are correct, the defendant's subscription is to be regarded as having been filed in the proper office.

The appellant's counsel argues that, by reason of the acts complained of, the corporation was not duly organized and had no existence, and for that reason the suit cannot be maintained. The defendant having signed the articles of association for the purpose of organizing the company, and the articles having been filed with his signature attached for that purpose, and being in all respects sufficient, *prima facie*, under the statute, he cannot question the fact of incorporation by reason of the acts complained of. The rights of third persons dealing with the corporation in good faith cannot thus be impaired. The fact of the incorporation can only be questioned in a direct action by the people.

The rights of the parties who signed the paper which was circulated in Barrington, and which differed from the paper filed with the secretary of state, are not involved in this action. It does not appear but that the amount of stock subscribed was sufficient for the purposes of the organization, exclusive of their subscriptions.

The judgment should be affirmed.

TALCOTT, P. J., and HARDIN, J., concurred.

Judgment affirmed.