Brown, J.
 

 The plaintiff is a railroad corporation, organ ized or claiming to have been organized under the act of the 2d April, 1850, to authorize the formation of railroad corporations, and to regulate the same.
 
 (Laws of
 
 1850, 211.) The defendant is one of the subscribers to the articles of association, for twenty shares of the capital stock, and the action is brought to recover the sum of $1000, the subscription price thereof being $50 the share.
 

 The principal question involved is the construction to be put upon the second section of the act; for it is claimed by the plaintiff that the company was duly organized, and the defendant became a stockholder with the burdens and obligations incident thereto. Section one provides for the organization of companies by articles of association, “in which shall be stated the name of the company, the number of years the same is to continue, the places from which and to" which the road is to be constructed, or maintained and operated, the length of such road as near as may be, the name of each county in this state through or into which it is made or intended to be made, the amount of the capital stock of the- company, which shall not be less than $10,000 for every mile of road constructed or proposed to be constructed, and
 
 *447
 
 the number of shares of which the said capital stock shall consist, and the names and places of residence of thirteen directors of the company, who shall manage its affairs for the first year. Each subscriber to such articles of association shall subscribe thereto his name, place of residence, and the number of shares of stock he agrees to take in said company.” On complying with the provisions of section two, such articles are to be filed with the secretary of state, and thereupon the incorporation of the company becomes complete. This section provides that the articles “ shall not be filed and recorded in the office of the secretary of state until at least $1000 of stock for every mile of the road proposed to be made is subscribed thereto, and ten per cent paid thereon in good faith, in cash, to the directors named in said articles of association, nor until there is indorsed thereon or annexed thereto an affidavit, made by at least three of the directors named in the said articles, that the amount of stock required by this section has been in good faith subscribed, and ten per cent paid thereon, as aforesaid, and that it is intended in good faith to construct, or maintain and operate the road.” The articles of association, with the affidavit annexed, were filed and recorded in the office of the secretary of state on the 23d August, 1852, and the defendant’s subscription to the articles for twenty shares of the
 
 stock
 
 was admitted upon the trial. The length of the proposed road was seventy-three miles; and the defendant proved the total amount of subscription for stock to the articles of association at the time they were filed was $390,000 ; that at that time ten per cent had been paid upon no more than $75,000 thereof. It was also proved that the defendant did not pay ten per cent upon the amount subscribed by him before the articles were filed with the secretary of state. Here, then, we have the point.in controversy distinctly presented. The requisite number of shares were subscribed, but ten per cent upon each of the shares was not paid. There was, however, actually
 
 *448
 
 paid ten per cent upon more than $1000 of the stock for every mile of the road proposed to be made.
 

 If we look for the object to be attained by requiring these subscriptions to the capital stock of the company, and the payment of the ten per cent upon the amount demanded, it appears to me it. is obvious it was to insure the organization of real, substantial companies in good faith, animated by an honest purpose, and having some degree of ability at least to undertake the proposed improvement. Preliminary to the act of incorporation, and as a condition precedent thereto, for every mile of road proposed to be constructed there must be not less than $1000 of the stock subscribed, and ten per cent paid thereon in good faith. Not ten per cent upon each separate share subscribed, for the word “thereon” does not refer to the shares separately, but ten per cent upon such a sum of subscriptions as in the aggregate would make a total subscription of $1000 for every mile oi road proposed to be made. The subscriptions might exceed this sum by as much more as the associates might be able to obtain; but unless they rose up to the prescribed amount, and unless ten- pei cent upon that amount was actually paid in cash, the incorporation of the company could not be effected. This is the plain import of the language employed, <vnd it was well adapted to accomplish the object intended. The aggregate subscriptions to the capital stock must be at the least equal to the sum of $1000 for every mile of the road which the company designed to make, and the cash payments to the directors must be at the least equal to the sum of ten per cent thereon. This condition was precedent to the incorporation of the company, and had reference to that object alone. Had the legislature intended the ten per cent should be paid upon each separate share of stock, they would have employed, to express that idea, the veiy appropriate language which is found in the fourth section, which authorizes the directors to receive subscriptions to the capital stoeb aider the incorporation of the company has been effected Vt- ú
 
 *449
 
 this: “ Every subscriber shall pay to the directors ten per cent, on the amount subscribed by him, in money, and no subscription shall be received or taken without such payment.” Although the language of this section is general, and broad enough in the absence of qualifying circumstances to embrace both classes of subscriptions, as well those prior as subsequent to the incorporation of the company, yet it is found in a section which refers to the latter class exclusively and must therefore be limited to apply to that class and no other. So far from aiding the defeiidant in the construction which he claims should be put upon the second section, I regard it as a confirmation of the views taken by the court below. The presence of the words interdicting subscriptions, after the company has become incorporated, unless accompanied with the payment of the ten per cent, and their absence in the section which provides for the preliminary subscriptions, show, I think, a manifest intention to distinguish between the two.
 
 (The Rensselaer and Washington Plank Road Co.
 
 v.
 
 Barton, decided in this court December,
 
 1854.
 
 *
 
 )
 

 
 *450
 
 The articles of association filed with the secretary consisted of seven separate instruments, exact copies or transcripts of
 
 *451
 
 each other. Each of them were signed by numerous, but different pei*oas, with the number of shares, and their places
 
 *452
 
 of residence set opposite their names respectively. No good reason can be assigned why these several papers should not be
 
 *453
 
 regarded as one instrument; I do not doubt that the signers so understood and intended. They were similar in all respects,
 
 *454
 
 except the names, residences, and the number of shares taken by each subscriber. They were designed to effect one common object, the creation and incorporation of the company, and bound those who signed to like duties and obligations. It has been said that the articles should be such that each subscriber may know, before they are filed, who his proposed associates are, and revoke his engagement if he chooses to do so. This observation might be true of a copartnership where each partner is the agent of the other, with power to bind the firm within the scope of the business and employment. It is not true of the shareholders in corporations. They have less interest in knowing each other, and in many cases are entire strangers. Assuming that an associate has the power to rescind his engagement, which I shall presently attempt to show he has not, he may ascertain his associates as well where there are several articles as where there is but
 
 *455
 
 one. When he subscribes his name he cannot have an election who shall sign after him, and can, I apprehend, exert but little power over the selection of his associate subscribers, whether they sign upon the same or upon separate articles from himself. The affidavit required by the second section in terms embraces them all. It refers to the annexed and foregoing articles of association, and declares them to be the articles of association of the company; I therefore conclude that the company was duly incorporated, and the defendant one of the original subscribers to its capital stock.
 

 The subscription of the defendant to the articles of association was, in effect, a contract to pay for and accept the twenty ffiares of stock. “ The advantages to be derived from being i member of such a company, and of the consequent right io participate in the pecuniary dividends, is a positive benefit; ind where the agreement secures that advantage to the subscriber, on the organization of the company, the objection of i want of consideration cannot be made with success.” (
 
 The Hamilton and Deansville Plank Road Co.
 
 v.
 
 Rice,
 
 7
 
 Barb. S. C. R.,
 
 157;
 
 Stanton
 
 v.
 
 Wilson, 2 Hill,
 
 153;
 
 Barker
 
 v.
 
 Bucklin, 2 Denio,
 
 45;
 
 The Schenectady and Saratoga Plank Road Co.
 
 v.
 
 Thatcher,
 
 1
 
 Kern.,
 
 102;
 
 Barnes
 
 v.
 
 Perine, 2 id.,
 
 18.) If the contract to pay for and take the stock was a valid contract, made upon a sufficient consideration, then Ms subscription was not open to revocation. Until the incorporation of the company was perfected, the other subscribers had an interest in its execution and performance of which they could not be deprived by the act of the defendant; and after the articles were filed and recorded in the secretary’s office, and the corporation had a legal existence, it acquired a vested interest in the defendant’s agreement.
 

 The defendant claims that he was entitled to notice by the directors of the company to pay for the stock or to pay the several installments required to be paid, and insists that the want of such notice is a good defence to the action. If notice to pay was indispensable, that given in the newspaper to which
 
 *456
 
 the defendant was a subscriber was certainly not sufficient; I cannot, however, see the authority for requiring any notice to entitle the plaintiff to recover the price of the stock. Section seven of the act declares that the directors may require the subscribers to the capital stock to pay the amount of their subscriptions in such manner and in such installments as they may deem proper. It further proceeds to declare that, upon the omission or neglect to pay, the board of directors shall be authorized to declare the stock of the delinquent subscriber and all previous payments thereon forfeited to the use of the company, but not until they shall have caused a notice in writing to be served on him personally or by depositing the same in the post-office, &c. This provision is manifest!) designed to apply exclusively to proceedings taken by th* directors to forfeit and sequester the stock of delinquen subscribers to the use of the company, -and its direction, must be strictly pursued. It does not, however, impair 0» affect in any way the company’s right of action at the com mon law to recover the price of the stock. The defendant’s obligation to pay and the time and manner of payment must be sought for in the contract itself. The money was not payable on time, or on call, written or oral. It was to pay generally, and was therefore payable presently, or as soon at least as the company was duly organized. Goods sold, or money loaned, followed by a promise to pay generally, and without time or terms specified, create a debt payable presently, and no previous call or demand of payment is required to maintain an action for its recovery. The same rule applies to every other contract to pay money absolutely. There is nothing in the present case to exempt the defendant from the operation of this principle.
 
 (Chitty on Con., 5th ed., 728.)
 

 The judgment of the Supreme Court should be affirmed
 

 All the judges concurring,
 

 Judgment affirmed.
 

 *
 

 The Rensselaer and Washington Plank Road Company
 
 v.
 
 William R. Barton.
 

 This was an action to recover the amount of the defendant’s subscription to the plaintiff, a corporation organized under the general act
 
 (ch.
 
 210
 
 of
 
 1847) to provide for the incorporation of companies to construct plank roads. The question came up upon a demurrer to the complaint. The defendant had judgment at the special term of the Supreme Court, but on appeal, that court, at general term in the third district, reversed the judgment, and the defendant appealed to this court. The structure of the complaint and the questions raised by the demurrer sufficiently appear in the following opinion of Selden, •T., in accordance with which, and with a concurring opinion of Rugglbs, J., the case was decided. The inability of Judge Ruggles to find the mislaid manuscript of his opinion prevented a report of the case in its chronological order by the late reporter.
 

 
 *450
 
 Semen, J. The position of the defendant’s counsel, that the subscription of the defendant to the capital stock of the company never became obligatory upon him, for the reason that he has never paid the five per cent required by the act, and that the complaint is defective for not averring such payment, is clearly untenable.
 

 It seems to have been held in
 
 JenJcinsv. Union Turnpike Company
 
 (1
 
 Cecine’a Cas. in Error,
 
 86), that where the act under which a company is incorporated required the payment of $10 per share at the time of subscribing, no action could be maintained against a subscriber who had omitted to make such payment ; and in the subsequent cases of
 
 Goshen Turnpike Company
 
 v.
 
 Hurtin
 
 (9
 
 John.,
 
 217), and
 
 Highland Turnpike Company
 
 v.
 
 McKean
 
 (11
 
 John.,
 
 98), this decision is referred to and apparently adopted. The reporter, however, in a note to the latter case, expresses his decided disapprobation of the doctrine, and it may well be doubted whether the reasoning upon which it was based.is sound, and whether, were the question to be again directly presented, this court would feel bound to follow it.
 

 But it is unnecessary to pass upon this question here, as the provision in the act under which the plaintiffs are incorporated, and that under which the decision referred to was made, are widely different. There is nothing in the plank road act which requires the payment of five per cent or any other sum at the time of subscribing, nor that each subscriber shall pay that amount at any time. The first section, which provides for the subscription to the stock and for all the preliminary steps necessary to the organization of the company, says nothing on the subject; but the second section forbids the filing of the articles of association until five per cent, not upon the amount of each subscription, but upon the amount of stock subscribed, shall have been paid.
 

 This provision clearly requires nothing more than that five per cent of the whole amount subscribed shall be paid before filing the articles, without regard to the sources from which it may come, notwithstanding the allegation in the complaint, therefore, that the whole sum subscribed by the defendant is still due and unpaid, the requirements of the act may have been fully complied with, as is substantially alleged in the complaint itself, which avows that the articles of association were duly filed pursuant to the act. It is not necessary in a suit by an incorporated company to set forth in detail the pre-' limitary steps by which the company became incorporated. This general averment is sufficient; and there is no inconsistency between it and the affidavit indorsed upon the articles of association, as the latter substantially complies with the act by stating that the amount of capital stock “ required by the first section,”
 
 i. e.,
 
 $500 for each mile of the road, had been subscribed, End that five per cent upon that amount had been paid in.
 

 
 *451
 
 Another objection taken by the defendant’s counsel is, that it appears from the complaint that the whole capital of $50,000 had not been subscribed. It is expressly provided by ¿he act that “ when stock to the amount of at least five hundred dollars for wery mile of the road” should have been in good faith subscribed, the association might be organized; and when five per cent upon this amount had been paid in, the incorporation might be perfected. These provisions afford a sufficient answer to this objection, as they evidently contemplate that the company may go into operation before the whole nominal amount of its stock is subseribbd. ■
 

 But the main grounds upon which the defendant relies to sustain his demurrer are: First. That the ttomplaint does not show any promise on the part of the defendant, either express or implied, to pay for the number of shares set opposite his name in the list of subscribers; and, Second. That, unless there was an express promise to pay, the corporation is confined to the statutory remedy of forfeiture.
 

 Both these points are, I think, settled by authority. In the case of
 
 Spear
 
 v.
 
 Crawford
 
 (14
 
 Wend.,
 
 20) the subscription was in these words: “ We the subscribers do severally agree
 
 to take
 
 the shares by us severally subscribed in the Harlem Canal Company.” This language, taken in connection with the act of incorporation, was held to import a promise to pay for the stock. Judge Sutherland says: “ The promise of the defendant and the other subscribers, although it is
 
 in fvrm to take the shares
 
 subscribed by them respectively, is undoubtedly ( when taken in connection with what precedes it, and with the act of incorporation, which is there referred to and in part recited) a promise not only to take the shares but to pay for them.”
 

 A similar question arose in the case of
 
 The Hartford and New Hcmen Railroad Company
 
 v.
 
 Kennedy
 
 (12
 
 Conn.,
 
 500), and was there very elaborately considered. The language ¿f the subscription in that case was as follows; “ Whereas the general assembly of the State of Connecticut, at their session in May, 1833, passed a resolution to incorporate the Hartford and New Haven Railroad Company, with power to construct a railroad or way from Hartford to the city of New Haven, we do hereby subscribe to the stock of said railroad the number of shares annexed to our names respectively, on the terms, conditions and limitations mentioned in said resolution.” This was held _,by the Supreme Court of Errors of Connecticut to amount to a promise by each subscriber to pay for the shares by him subscribed, according to the terms of the charter. Judge Huntington says: “ It is true a promise to pay in precise terms does not appear to have been made. The defendant has not affixed his signature to an instrument which contains the words
 
 1 promise to pay,
 
 but he has done an equivalent act. He has contracted with the plaintiffs to become
 
 *452
 
 a member of their corporation, and to be interested in their stock to the extent of one hundred dollars for each share assigned to him.”
 

 The Hartford and New Haven Railroad Company
 
 v.
 
 Croswell
 
 (6
 
 Hill,
 
 3S3) was an action upon the same subscription, and although the question whether a personal obligation to pay was incurred by the subscription was not directly raised, it was nevertheless involved in the case and virtually decided in the affirmative by the court.
 

 In the more recent case of
 
 The Northern Railroad Compawy
 
 v.
 
 Miller
 
 (10
 
 Scrrb. S. G. R.,
 
 260), where the undertaking of the defendant, as stated in the complaint, was, that the “ defendant did subscribe for five shares of the said stock, amounting to the sum of $250, and thereby promised
 
 to take
 
 five shares of the said stock, subject to the conditions, requirements, liabilities and benefits of the said act,” the Supreme Court in the fourth district held, al general term, that the subscription raised an implied promise to pay for th( stock subscribed.
 

 The principle established by these cases is that, whatever may be the forn or language of a subscription to the stock of an incorporated company, ever) person who in any manner becomes a subscriber for or engages to take an) portion of the stock of such company, thereby assumes to pay for the same according to the conditions of the charter. In order, therefore, to determine as to the liability of the defendant in this case, we have only to inquire whether lie has virtually become a member of the association and subscribed for a portion of its stock.
 

 The articles of association to which the defendant affixed his name commence as follows: “ The subscribers, in pursuance and by virtue of an act of the legislature of the State of New-Vork, entitled
 
 1
 
 An act to provide for the incorporation of companies to construct turnpike roads,’ passed May 7,1847, hereby associate themselves together under the name of The Bensselaer and Washington Plank Boad Company.” It also declares that the amount of the capital stock of the company is $50,000, to consist of “ one thousand shares at fifty dollars a share.” At the head of the list of subscribers attached to these articles is the name and place of residence of the defendant, signed by himself, and opposite thereto the number eight, at the top of the column headed “ No. of shares.”
 

 The cases already cited show that, whenever the subscription papers refer to the charter of the company, the provisions of such charter are virtually incorporatcd into the subscription and are to be referred to for the purpose of explanation. This is also distinctly asserted in the case of
 
 Small
 
 v.
 
 The Herkimer Manufacturing Company,
 
 decided by this court (2
 
 Comst.,
 
 830). (íardiner, J., there says: “ The subscription must be construed, therefore, as $f ill the pro -'sions of the statute affecting the liability of the subscriber or
 
 *453
 
 his title to the stock purchased by him were incorporated in his agreement. This has never been questioned.”
 

 The articles of association signed by the defendant declare that the subscribers have associated themselves together “ in pursuance and by virtue of the act ” which authorizes the incorporation of such companies. One of the provisions of that act is, that the articles of association shall set forth, among other things, the amount of the capital stock of the company and the number of shares of which it shall consist, and that “ each subscriber to such articles of association shall subscribe thereto his name and place of residence, and the number of shares of stock
 
 taken by him
 
 in said company.”
 

 Does not the subscription of the defendant to these articles of association, when construed in connection with this provision, distinctly import that the defendant has taken or subscribed for the number of shares set opposite his namel It admits, I think, of no other interpretation. If this be the true construction of the act of the defendant in subscribing, then it follows from the principles already established that he undertook to pay for the shares of stock thus taken, according to the provisions of the act. The justness of these principles is apparent from the nature of the contract, which is simply i sale of so much stock by the company to the subscriber, and like every other contract of sale only requires that enough should be said or done to show that one party makes an offer to sell which the other party accepts. If there is a sale, then no promise in terms to pay is required, such a promise being Inherent in and inseparable from the contract of sale.
 

 But it is contended that the promise, if any, is implied merely, and that lothing short of an express promise will subject the party to an action where, as in this case, the statute gives a remedy by a forfeiture of the stock.
 

 This precise position was taken in
 
 The Hartford and New Haroen RaHroad Company
 
 v.
 
 Kennedy,
 
 and in
 
 The Northern Railroad Company
 
 v.
 
 Miller {supra),
 
 and was overruled in both cases. In the former case, Judge Huntington says: “But if the thirteenth section provides the
 
 only
 
 remedy to enforce the payment, and therefore excludes an
 
 implied
 
 promise, it is not readily perceived why it should not cause an
 
 express
 
 promise to be legally inoperative. There is no other consideration to support the latter than t^at which sustains the former. It is precisely the same in both. The moral obi!» gation to pay is equally strong in both.”
 

 In the latter of these two cases, Mr. Justice Willard holds simife. language. He says: “There can no case be found where the courts of this state have made any distinction between an express and an implied promise with reference to the question we are considering. They both plainly stand cpon the same footing." If an action will lie in the one case it will in the other.”
 

 
 *454
 
 There can indeed be no foundation in principle for this distinction. The legal obligation arising from the promise is precisely the same whether it be express or implied. The sole ground of the numerous decisions sustaining an action in such cases is, that the remedy given by statute, by forfeiting the stock, is merely cumulative, and does not take away any common law remedy.
 

 The only point remaining to be considered is, that if any contract was made in this case it was made before the company was incorporated, and consequently before it was legally capable of making a valid contract. The act under which-this company is incorporated requires, as we have seen, that stock to the amount of at least $500 per mile should be in good faith subscribed before the associates could proceed to organize the company. . Such a provision is common in acts authorizing similar incorporations. It is apparent that, if the objection is sound, the whole object of such a provision is defeated; as the subscriptions, if made, would impose no obligation on the "subscribers to pay. Even the five per cent paid in advance could not be retained, if the contract in pursuance of which it was paid was void. It is clear that no such objection has heretofore been supposed to exist to a subscription of this kind, as I find no trace of its having been made in any previous case, and yet the instances have been numerous in which it would have constituted a valid defence, if it is of any validity here. The statute which expressly authorizes such a contract has undoubtedly, and as I think with propriety, been regarded as a sufficient answer to this objection.
 

 The judgment of the Supreme Court must therefore be affirmed.