LA GRANGE AND MONTICELLO PLANK ROAD COMPANY, Plaintiff in Error, v. MAYS, Defendant in Error.

1. A subscriber to the stock of a plank road association, organized under the act of February 27, 1851, (Sess. Acts, 1851, p. 259,) made his subscription upon the faith of an agreement made with a previous subscriber and stockholder that he would not be required to pay his subscription unless the road should be built; *held*, that this agreement was void.

*Error to Lewis Circuit Court.*

The facts sufficiently appear in the opinion of the court.

*Wagner*, for plaintiff in error.

I. The parol evidence was inadmissible to vary, limit, qualify or release the obligation of Mays. (1 Greenl. Ev. § 275; 1 Pet. 591; 9 Wheat. 587; 8 Mo. 391.) Waltman was not agent for the company. Even if the agreement had been authorized by the company, it would not have been binding. (See 4 Kern. 355.) The agreement was secret between Waltman and Mays, and therefore contrary to public policy

and void. (18 Pick. 472; 19 Pick. 275.) The work was entered on and money expended, and this was sufficient to fix the defendant's liability even if there had been no act of incorporation. (20 Johns. 89; 1 Pars. on Contr. 378; 12 Mass. 190; 14 Mass. 172; 12 Metc. 565; 18 Mo. 512.)

EWING, Judge, delivered the opinion of the court.

This was an action, commenced before a justice of the peace by the plaintiff in error, to recover an assessment or call on the subscription of the defendant to the stock of the company. There was judgment for plaintiff, from which defendant took an appeal to the circuit court, where the judgment being for defendant plaintiff brings the cause to this court by writ of error.

The plaintiff is a corporation organized under the law of the state authorizing the formation of associations to construct plank roads, approved February 27, 1851. The facts appearing on the trial are, that at the time defendant made his subscription of stock—six shares, or three hundred dollars—one Waltman, one of the corporators, who obtained the subscription from defendant, told him that he would not be required to pay his share of the subscription unless the road should be built, and upon this agreement the subscription was made. It further appeared that afterwards the company was organized in the manner required by law; proceeded to have the route of the road surveyed, expending some sixteen hundred dollars thereon, and made three several calls of two and a half, five and seven per cent. on the stock subscribed to pay for the same; also twenty per cent. damages on the amount of said calls, according to the by-laws of said company; that the road has not been completed, but abandoned. The law under which this company was organized, in regulating the payment of capital stock, provides that the directors may require payment, from subscribers to the capital stock, of the sums subscribed by them, at such times and in such proportions and on such conditions as they shall deem proper, under the penalty of the forfeiture of their stock and of all previous

payments thereon, or under such other penalty or forfeiture
as such company may by its by-laws prescribe.

The question presented by the record is, as to the effect
of the agreement entered into between defendant and Walt-
man, another subscriber, annexing the condition already
stated to the subscription; whether, the enterprise for which
the company was organized having been abandoned without
completing the road, the defendant is discharged by virtue
of that agreement from the payment of the assessment made
upon his stock.  This agreement was a private one between
the parties, known only to themselves, in which one of the sub-
scribers, without authority from the other subscribers or the
company, assumed to permit defendant to limit his liability,
and so to qualify it as in a certain event to release him en-
tirely from all obligations as a stockholder.  The subscrip-
tion of the defendant to the articles of association upon its
face was unconditional, and he incurred thereby, with the
other subscribers thereto, a common liability, and was in all
respects upon an equal footing with them.  In all such un-
dertakings the respective subscriptions are contributions for
a common object, in which each stockholder invests his
money upon the faith of a like investment by the others, and
especially in the confidence that the engagements and liabili-
ties of each subscriber are what they purport to be.  The
assurance others held out, of a common participation in the
burthens no less than the benefits, is among the chief induce-
ments.

It is evident, from this view of the relation that stockhold-
ers sustain to each other, that to give effect to an agreement
like that relied on as a defence in this case would be a fraud
upon the other subscribers; that it would sanction the prin-
ciple, that, by a secret stipulation entered into between these
parties, they could so modify the contract as to relieve the
defendant from a liability which the other subscribers believed
he had really assumed, and also of his due share of the bur-
then which he ostensibly took upon himself by the contract
to which he and they in common became parties.

The principle upon which such private agreements are held void is, that the equality, for which the parties to the articles of association therein stipulated, should be preserved, and that the common liabilities which they impose can not be evaded by secret agreements, without perpetrating a fraud upon the others. The fraud in such cases consists in presenting the *ostensible* contract to others as the true contract on the subject, when another secret stipulation existed, which, if permitted to stand as binding, would give full effect to the fraud. It is the secret stipulation alone which operates in fraud of others; and upon that the law leaves the parties where they stand, declining to enforce it for the benefit of either, while, as to the other part of the contract, to enforce it between the parties is what is necessary to defeat the fraudulent purpose as to other innocent persons. (White Mountain Railroad v. Eastman, 3 N. H. 141.) In the case cited—the facts of which, being similar to this, may be briefly stated—the action was brought by the railroad company to recover assessments on shares of stock subscribed by defendant's intestate. The defence was that an agreement was made between the intestate and the directors of the company, signed by the clerk thereof, by which, in consideration of defendant's intestate subscribing for thirty shares in said railroad, per request of the corporation, he was to be relieved from twenty-five shares, or such portion of said twenty-five shares as he or his heirs, executors or administrators might, within a specified time, elect to withdraw from his subscription; and that any sum he might have paid on shares that he elected to be relieved from should be allowed him on the shares retained by him in the corporation. The paper signed by the clerk was executed by authority of a vote of the directors, which was not recorded, and when no persons were present except defendant's intestate, the directors, and clerk. It was proved that the subscriptions were so taken in order to show as large a subscription as possible, and to induce other persons to subscribe. Upon this state of facts the agreement was held void as a fraud upon the other subscri-

bers, and that the original subscription might be enforced for its full amount between the corporation and subscriber. In Mann v. Cooke, 2 American Railway Cases, 125, the same principle was applied under somewhat similar circumstances, and the court held that the corporation could not receive a subscription under a private arrangement at less than its par value of the stock, as this would take from the company so much of its available means, and thus operate as a fraud upon creditors and other stockholders.

The other judges concurring, the judgment will be reversed and the cause remanded.