Calvin Haskell, Assignee, Respondent, *v.* Miles Sells, Appellant.

### June 12, 1883.

1. CORPORATIONS — STATUTES. — A business corporation organized in September, 1879, could not be incorporated under Article VIII. of the revision of 1879, which did not go into effect until November following.

2. —— SUBSCRIPTION — VARIANCE. — There is no variance between a subscription list under the name, "The Missouri Cotton Seed Oil Company," and the articles of incorporation which add thereto the words, "of St. Louis."

3. —— An agreement to take shares in a corporation to be formed, enures to the benefit of the corporation when organized in pursuance of the subscription.

4. —— The shares of stock being for $100 each, a subscription of $1,000 is not void for uncertainty.

5. —— ASSIGNMENT. — The corporation's right of action against a subscriber to shares of its stock passes to its assignee under a general assignment.

6. —— CONTEMPORANEOUS AGREEMENTS. — A contemporaneous agreement with the promoter, which gives the subscriber an option to take the shares, is no defence to a subscription unconditional on its face and on the faith of which others have subscribed.

7. —— LIABILITY OF STOCKHOLDERS. — Liability of a shareholder having become fixed by a subscription can not be avoided by giving notice to the promoter that the subscriber declines to take the stock.

8. —— Such a liability is not affected by the subscriber's failure to meet subsequent calls or to take part in proceedings of the corporation, or by the fact that no calls were made upon, or stock issued to, him.

9. —— TRUSTS. — Stock in a corporation is a trust fund for the benefit of creditors of the corporation, and is created by an agreement to take shares of stock.

10. —— POWERS OF OFFICERS. — A contract to take shares of stock can not be released by the officers of the corporation without consideration and in fraud of the rights of the creditors and of the shareholders of the corporation.

APPEAL from the St. Louis Circuit Court, ADAMS, J. *Affirmed.*

THOS. C. FLETCHER, for the appellant: Article VIII., of chapter 21, of the Revised Statutes of Missouri, went into effect on August 18, 1879. The appellant never became a stockholder. — *Beach* v. *Smith*, 30 N. Y. 116 ; *Excelsior Co.* v. *Strayner*, 25 Hun, 91. The signing of the memorandum sued on did not create the liability of a shareholder.—Thomp. on Liab. of Stock., sect. 105 ; *Mudgett* v. *Howell*, 33 Cal. 25. The alleged contract being repugnant to and contravening a statute, can not be enforced. — *Barton* v. *Plank R. Co.*, 17 Barb. 404 ; *Seneca Bank* v. *Lamb*, 26 Barb. 601. The company went into operation without full subscription of stock and without Sells' assent, and he is therefore not liable. 2 Redf. (5th ed.), top page, 549, sect. 242 ; Thomp. on Liab. of Stock., sect. 120 ; *Gargling* v. *Buechtel*, 41 Md. 325 ; *Hager* v. *Cleveland*, 36 Md. 476.

JOHNSON, LODGE & JOHNSON, for the respondent : A subscriber for stock is released from his subscription by a

subsequent alteration of the organization or purposes of the company, only when such alteration is both fundamental and not provided for or contemplated by either the charter itself or the general laws of the state. — *Nugent* v. *The Supervisors*, 19 Wall. 251, and cases cited; *New Haven, etc.*, v. *Chapman*, 38 Conn. 56 ; *Clark* v. *Monongahela, etc.*, 10 Watts, 364; *Delaware, etc.*, v. *Irick*, 23 N. J. L. 321; *Pacific, etc.*, v. *Hughes*, 22 Mo. 291. The subscription inured to the benefit of the corporation when formed. — *Lagrange* v. *Mays*, 29 Mo. 65. The right of action passed by the assignment. — *Schultz* v. *Sutter*, 3 Mo. App. 137; *Lionberger* v. *Broadway Bank*, 10 Mo. App. 499. A failure to give the notice of calls does not in any way affect a subscriber's liability upon his contract of subscription. — *Lake Ontario* v. *Mason*, 16 N. Y. 451; *Penobscot, etc.*, v. *Dunn*, 39 Me. 587. The secret agreement, as testified to by appellant, between himself and Kay and Tilden, two of the promoters of the company, relative to his taking the stock or not at his option, was in fraud of the rights of the other subscribers and void, and appellant can not claim any advantage therefrom. — *Pickering* v. *Templeton*, 2 Mo. App. 424; *Upton* v. *Tribelcock*, 91 U. S. 45; *Swartout* v. *The Mich., etc.*, 24 Mich. 389; *Ridgefield, etc.*, v. *Bush*, 43 Conn. 86. It is not necessary that a certificate of stock should have been tendered to the subscriber. — *Georgia R. Co.* v. *Ayers*, 56 Ga. 230; *Fulgum* v. *Macon R. Co.*, 44 Ga. 597.

BAKEWELL, J., delivered the opinion of the court.

Under the rule of court permitting this to be done (Rule XII.), the parties have agreed to a statement of the cause of action, the defence, the evidence, the rulings of the trial court, and the exceptions saved, which, being accompanied by a certificate of the trial judge, is to be treated in this court as the record.

The statement is as follows : The plaintiff is the assignee

of the Missouri Cotton Seed Oil Company. The plaintiff,. as such assignee, brought his suit against the defendant, alleging, in substance, a contract on the part of defendant with his co-subscribers to take ten shares of the capital stock of said company under the name of the Missouri Cotton Seed Oil Company. The contract sued on and offered in evidence is as follows : —

" We, the undersigned, hereby severally subscribe for the number of shares set opposite our respective names to the capital stock of the Missouri Cotton Seed Oil Company — a company to be organized under the laws of the State of Missouri — and we severally agree to pay the said company the sum of one hundred dollars on each share. Twenty-five per cent to be paid on organization of the company. Twenty-five per cent to be paid on first day of September. Fifty per cent to be paid on the first day of October, or as soon thereafter as the board of directors shall call for it to be paid in.

" Dated this **twenty-eighth day of July,** 1879.

" Shares.

| | | |
|---|---|---|
| " 200 | Wm. V. Kay | $20,000 |
| 50 | John B. Tilden | 5,000 |
| 50 | H. C. McNeil, Friars P., Miss. | 5,000 |
| 50 | Calvin Haskell | 5,000 |
| — | Miles Sells | 1,000 |
| — | G. J. Shaw | 1,000 |
| 10 | Web. M. Samuel | 1,000 |
| 20 | W. H. Waters | 2,000 |
| 10 | Given Campbell | 1,000 |
| 25 | Chas. T. Worthington, Liota, Miss. | 2,500 " |

And alleging that the other persons, whose names are appended to said paper, subscribed to the same in consideration of the alleged undertaking on defendant's part. That afterwards, to wit, about the twenty-third day of September, 1879, the company was duly organized under the name of the Missouri Cotton Seed Oil Company of St. Louis, and com-

menced business in St. Louis; that the other subscribers
to the said paper, Kay, Tilden, Haskell, Shaw, Waters and
Campbell, each accepted the shares subscribed for by them
severally, and paid for the same; that the corporation, on
the 29th of September, 1879, duly adopted a by-law, as
follows : —

"The capital stock shall be paid in upon such assess-
ments and at such place as the board of directors may
order, a written or printed notice of which shall be given
each stockholder by the secretary, and any subscriber who
fails to pay any such assessments so ordered, after thirty
days' notice, shall forfeit to the company the amount, if any,
already paid on his stock, if the company so elect;" that,
afterwards, on the same day, the board of directors passed
a resolution ordering and directing an assessment on the
capital stock, to be paid as follows: fifty per cent on the
1st of October, 1879; twenty-five per cent on the 15th of
October, and twenty-five per cent on the 10th of November,
1879; that the defendant did not pay any part of his sub-
scription at any time; that the company afterwards became
insolvent, and about the 24th of February, 1881, made an
assignment in due form to plaintiff, by and under the name
of the Missouri Cotton Seed Oil Company, for the benefit
of his creditors, and that the assets of the company are
wholly inadequate to the payment of the debts, and
demanded judgment for one thousand dollars and interest.

The answer of the defendant was a general denial. The
cause was tried by the court without a jury. The signa-
ture of defendant to the paper sued on was admitted. It
was then offered in evidence and objected to by defendant
because there are no number of shares set opposite defend-
ant's name, and because there was not shown the existence
of a corporation by the name of the Missouri Cotton Seed
Oil Company; but the court overruled the objection, and
the same was read as hereinabove set out, to which opinion
and decision of the court in admitting the same, the defend-

ant excepted.   Plaintiff then read the articles of incorporation of the Missouri Cotton Seed Oil Company of St. Louis, in the usual form, the same not being signed by the defendant or any mention of his name appearing therein for any purpose, and then read the certificate of incorporation issued by the secretary of state, in due form, to the Missouri Cotton Seed Oil Company of St. Louis, and in which there is no mention of defendant as a corporator ; to all of which defendant objected, and being overruled, duly excepted.

The assignment of the company to plaintiff was admitted as alleged in the petition, and that he is the duly qualified assignee of the corporation ; that whatever cause of action the corporation might have had, if any, against defendant, passed to plaintiff; that the company was insolvent.

Plaintiff Haskell testified that he subscribed and paid for fifty shares, $5,000 ; that he never saw or had any conversation with defendant previous to the organization of the company, nor subsequently ; that he subscribed at the solicitation of Tilden and Kay; he never knew of any meeting of the subscribers for stock, for the purpose of organizing the company, or for any other purpose ; that Kay called on him about the 1st of October, 1879, and he paid his subscription ; he received his certificate of stock ; Shaw, Campbell, Waters, himself, and Waller, paid in full, and Mr. Kay paid in part; that he was treasurer of the company the second year, and a director ; that the company carried on the business of manufacturing cotton seed oil from the 1st of October, 1879, to the 17th of January, 1881.   It was admitted that the stock certificates were in the name of the Missouri Cotton Seed Oil Company ; that the company did business under that name, took a lease to its factory property, and made and executed the deed of assignment under that name.   The minutes of the record of the proceedings of the board of directors was identified by Haskell and examined; it did not appear that defendant was ever present at a meeting of the board or of the stock-

holders, or was ever mentioned on the books as a stockholder. Plaintiff Haskell was a creditor of the company, and Kay's wife was also a creditor; he never demanded of defendant his subscription, nor spoke to him of it.

Given Campbell testified that he had subscribed for ten shares of the stock, and had paid for them and received his certificate of stock. He did not have any conversation with defendant on the subject at or before the time when he subscribed.

W. H. Waters testified that he had subscribed for twenty shares, $2,000, and had paid for them and received a certificate of stock. Never had any conversation with defendant in reference to the matter.

It was further admitted that Haskell, Waters, and Campbell signed the subscription after the defendant did; that they never consented to release him from the contract; that they never knew of any arrangement between the defendant and Kay to the effect that defendant was not to be held upon his own subscription, and that they testified that if they had known of such arrangement they would not have signed the contract.

The defendant, Miles Sells, testified that he signed the papers sued on after repeated solicitations of Tilden, and with the understanding between them that it amounted to an option for sixty days to take stock if he wanted it; afterwards told Tilden, on 'Change, and Kay that he would not be able to take the stock, and they said they would take it themselves; that the value of their machinery was considerably more than the amount of the stock they had taken; I never heard of the matter again; I never attended any meeting relating to the company nor received notice of one, and was never called on to pay anything, nor notified to do so, and never heard of it again until I was sued (the service of the writ was September 17, 1881), except a letter I received from Mr. Johnson (plaintiff's attorney) when I was at Spring Lake. All the talk I ever had about

it was with Tilden and Kay on 'Change. The paper I signed, Tilden said was a memorandum he was making up, and when I told him I could not take the stock, he said that was all right, and that was the last I ever heard of it till this suit was brought; that he signed for ten shares of stock; he did not know whether or not. the company was organized at the time he told Tilden and Kay he could not take the shares of stock; that he told them within sixty days after the subscription; that he knew there was some· kind of a cotton seed company organized, but whether it was the same company or not he never knew.

The court found for the plaintiff, $1,026.64, holding that there was a private arrangement between defendant and the prime movers in getting up the corporation, to the effect that he need not take the stock unless he elected to do so in sixty days; that the arrangement was not known to the other subscribers; that they relied on his subscription as being genuine; that though the defendant did not sign the articles of association, being unaffected by other consideration or by law; that no notice of assessment was necessary to defendant; that he was a defaulting subscriber to the stock; that his rights and liabilities are not affected by his non-participation in the organization or business of the company; that his liability was fixed by his subscription and the consequent organization of the company; that the rights of the parties were concurrent and dependent; that the organization of the company and the beginning of the contemplated business was an acceptance of the subscription; that the demand of a fixed indebtedness was not affected by the delay in the demand for it; that the name was not essential, and that the variance in the name was not material; and gave judgment for the plaintiff as above stated. There was a motion for a new trial, which was overruled, and exceptions duly saved, and an appeal prayed.

The parties agreed upon the foregoing statement for the purpose contemplated by Rule XII., court of appeals, and the judge before whom the case was tried, hereby certifies

the foregoing to be a substantial history of what occurred
at the trial, and that the appeal has been perfected, and a
bond approved as a *supersedeas*.

Counsel have printed this record for the convenience of
the court. We find, on comparing this printed record with
the original, an error in date. In giving the day on which
the company was organized, "December" has been acci-
dentally substituted for "September," which is the month
in which the company was incorporated. It is claimed by
appellant that the company was incorporated after the
amendments to the corporation law embodied in the revis-
ion of 1879 were in force. There could be no doubt about
this had the date been December. The real date was
September 23, 1881; and we think it clear that at that date
the corporation law in force was that to be found in Wag-
ner's Statutes of 1872 (p. 332, Art. VII.)

Counsel for appellant argues that Article VIII., of chap-
ter 21 of the Revised Statutes of 1879 went into effect on
August 18, 1879, because it was passed as a separate
revised bill, and that date was ninety days after May 20,
1879, the date of the adjournment of the legislature.

It appears from the note at page 805 of the Revised
Statutes, that except as to seventeen chapters set out in the
note, all of the seventy-three chapters of the first volume of
the last revision were passed as revised bills. The chapters
which contain the corporation law not being among the
exceptions, were passed as revised bills, but it does not
follow that they went into effect ninety days after the legis-
lature adjourned; on the contrary, it seems clear that they
did not got into effect, in their amended form, until the first
of November, 1879.

The constitutional provision (Art. IV., sect. 36), and
the general legislative provision (Rev. Stats., sect. 3149),
are to the effect that laws go into effect ninety days after
the adjournment of the session, unless there be an emergency
clause to the bill. But the special provision as to the
Revised Statutes of 1879 (Rev. Stats., sect 3168), is to the

effect that the Revised Statutes shall go into effect from 1st of November, 1879, except such acts, passed by the present General Assembly and incorporated therein, as shall, by their provisions, take effect at a different time, and until the Revised Statutes shall go into effect, as herein provided, the existing statutes shall continue in force. Article VIII. of the Revised Statutes "Of Manufacturing and Business Companies," contains many new sections, and many amendments, but there is no provision in that article, or in the general chapter "Of Private Corporations," of which it is a part, providing for its going into effect at a different time from the rest of the revision. The Missouri Cotton Seed Oil Company was, therefore, incorporated under the provisions of Article VII., of Wagner's Statutes of 1872, in force at the time, which differs from the subsequent revision of 1879 in many respects. It does not require, as does the later law (Rev. Stats., sect. 926), that the names and places of residence of the several stockholders, and the number of shares subscribed by each, shall be set out in the articles of agreement, a certified copy of the record of which is to be filed with the secretary of state, as the basis of his certificate of incorporation. This difference is important when we have to consider what acts, if any, looking to a rescission of the contract of subscription to the shares, were done or accepted by the corporation, the corporators, the other stockholders, or the defendant Sells.

There is nothing whatever in the point that the name of the subscription paper signed by Sells was "The Missouri Cotton Seed Oil Company," and the name in the articles of association "The Missouri Cotton Seed Oil Company of St. Louis." *Schaeffer* v. *Gruen*, 4 Mo. App. 115. Nor did the omission of the number of shares before the name of the subscriber render the contract uncertain, since the agreement fixed the value of each share at $100 and $1,000 was subscribed. That the right of the corporation against

Sells under his contract of subscription passed to the assignee, is not to be questioned. *Lionberger* v. *Bank*, 10 Mo. App. 499.

The subscription paper signed by Sells was an unconditional agreement to take a certain number of shares. This, *prima facie*, constituted the subscriber a stockholder. Thomp. on Stock., sect. 105. That there was no corporation in existence at the time the paper was signed is immaterial. The objection that there is no promise in such a case is satisfactorily met by the suggestion that the promise becomes definite and fixed when, in accordance with the expectation of the subscribers, the corporation is effected. *Comstock* v. *Hurd*, 15 Mich. 237. It has been decided, again and again, that contracts such as that sued upon here, enure to the benefit of the proposed company when incorporated, and can be enforced by it. *Lake Ontario, etc.*, v. *Mason*, 16 N. Y. 451.

The subscription of the defendant was unconditional upon its face. In contradiction of the writing, and after other subscriptions have been obtained on the faith of his, he endeavors to show an oral contemporaneous agreement between himself and two promoters of the company that he was to have an option of withdrawing within two months. Such a secret agreement, if it could be shown to contradict the writing, would be a fraud. We need not dwell upon this. *La Grange, etc.*, v. *Mays*, 29 Mo. 64 ; *Pickering* v. *Templeton*, 2 Mo. App. 429.

The liability of defendant as a stockholder having been once fixed, could not, of course, be avoided by mere notice by him to officers or promoters of the corporation that he declined to make good his agreement. Nor does it appear how the officers of the corporation, or the promoters, could release the defendant without the consent of the other subscribers. *Hughes* v. *Antietam, etc.*, 34 Md. 317. The subscription for shares of stock made the subscriber a stock-

holder, though he failed to meet the subsequent calls; and it made no difference that certificates of stock were not in fact issued. *Schaeffer* v. *Finn*, 46 Mo. 248. The failure to give notice of calls does not affect the subscriber's liability upon his contract of subscription. *Lake Ontario, etc.*, v. *Mason*, 16 N. Y. 451. Nor is it material that defendant never participated in any business meetings. 68 Pa. St. 429.

Stock is created by contract, in the simple form of subscription, or in any other mode. The agreement to take the stock imparts to it the quality of property; and, when created, the capital stock of a corporation is a trust fund for the payment of debts. The unpaid balances upon subscriptions are as much a part of the capital of the company as the money paid in. Credit is obtained on the faith of such subscriptions; and the directors can not, without a breach of trust, attempt, without an equivalant paid to the company, to release a subscriber from his obligation. *Fisher* v. *Seligman*, 7 Mo. App. 383.

Had the incorporation been made under the existing law ( Rev. Stats., sect. 926 ), there might have been something in the objection that in the organization of the company the name of the defendant was omitted from the list of stockholders. This would have tended to show that his subscription was not accepted, and that he was in no way held out to the public as a stockholder. But as we have said, the law in force at the time of the subscription, and at the time of the organization of the company (1 Wag. Stats., p. 333, sect. 2 ) did not require that the constating instrument should give the names of the shareholders. We think that the facts in evidence warrant the judgment of the circuit court, and that it ought to be affirmed. All the judges concur.